## Exhibit B:  HAMP Monthly Trial Data Collection Elements

The following data elements are necessary for recording borrower payments during the trial period.

| Name | Definition | Data Type | Allowable Values | Mandatory/ Conditional |
|------|------------|-----------|------------------|------------------------|
| HAMP Servicer Number | A unique identifier assigned to each Servicer that is participating in the HAMP program. | Text (30) | | M |
| Servicer Loan Number | The unique (for the lender) identifier assigned to the loan by the lender that is servicing the loan. | Text (30) | | M |
| GSE Loan Number | A unique number assigned to each loan by a GSE (Fannie or Freddie) | Text (30) | | C |
| GSE Servicer Number | The Fannie Mae or Freddie Mac unique Servicer identifier. | Text (30) | | C |
| Trial Payment Number | The number of the trial payment being reported. The code that is used to define a single payment number that will be one of a series of payments that together will complete a loan trial payment period. | Numeric (4,0) | | M |
| Trial Payment Received Amount | The actual dollar amount of the payment received from the borrower to the servicer for the trial payment. | Currency (20,2) | | M |
| Trial Payment Posted Date | The date the payment was posted during the trial period. | Date (CCYY-MM-DD) | | M |

## Exhibit C:  Monthly Loan Activity Records

The following data elements are required for monthly loan activity records (LARs).  Step rate attributes (interest rate, rate effective date, P&I payment) will only be reported on the LAR the month before the rate change is effective.  The Action Code and Action Date are only reported when a loan is being removed (e.g., payoff, repurchase).

| Name | Definition | Data Type | Allowable Values | Mandatory/ Conditional |
|---|---|---|---|---|
| HAMP Servicer Number | A unique identifier assigned to each Servicer that is participating in the HAMP program. | Text (30) | | M |
| Servicer Loan Number | The unique (for the lender) identifier assigned to the loan by the lender that is servicing the loan. | Text (30) | | M |
| Last Paid Installment Date After Modification | The due date of the last paid installment of the loan. | Date (CCYY-MM-DD) | | M |
| Unpaid Principal Balance After Modification | The unpaid principal balance of a loan after the loan modification.  The unpaid principal balance after modification excludes any applicable forbearance amount and can also be referred to as Net UPB Amount. | Currency(20,2) | | M |
| Interest Payment | Interest portion of the P&I remitted | Currency(20,2) | | M |
| Principal Payment | Principal portion of the P&I remitted | Currency(20,2) | | M |
| Step – Payment Effective Date | The date the payment will be effective. | Date (CCYY-MM-DD) | | C |
| Step – Note Rate | The interest rate in the month after loan modification. | Numeric (6,4) | | C |
| Step – Principal and Interest Payment | P&I Amount - The amount of the principal and/or interest payment due on the loan for each installment, beginning on the effective date. | Currency(20,2) | | C |
| Action Code | A code reported by the lender to update the loan that indicates the action that occurred during the reporting period | Numeric | 60 (payoff) 65 (repurchase) 70 (liquidation held for sale) 71 (liquidation 3rd party sale/ condemnation/ assigned to FHA/VA) 72 (liquidated – pending conveyance) 76 (Deed in Lieu) 77 (Deed-in-Lieu with Jr. lien) 78 (Short Sale) 79 (Short Sale with Jr. Lien) | C |
| Action Code Date | The effective date of the action associated with the action code. The action date is required for certain action codes. | Date (CCYY-MM-DD) | N/A | C |

### Exhibit D
### HAMP Additional Data Requirements

Data required to be collected as specified below must be <u>reported</u> on a loan by loan basis starting on October 1, 2009. This document does not describe all of the data that the servicer must retain; it addresses only the data that must be reported.

<u>Must be reported starting October 1, 2009 for transactions occurring before October 1, 2009</u>

- Race, ethnicity, sex of borrower and co-borrower (submission by borrower is voluntary)
- Middle name of borrower and co-borrower
- Date of birth of borrower and co-borrower
- Credit score of borrower and co-borrower
- NPV Model inputs, e.g., discount rate, flag for nonstandard model, non-standard re-default rate, non-standard cure rate
- Selected data on loan, borrower, and property characteristics as of origination, to the extent already required by OCC or OTS to be reported under "Mortgage Metrics"

The above fields must be <u>collected</u> as follows and reported starting October 1, 2009:

- all completed modifications;
- trial modifications commenced on or after July 1, 2009; and
- starting on October 1, 2009, loans evaluated for a modification (to be defined) that do not enter trial modifications.

<u>Must be reported starting October 1, 2009 (detailed definitions to be provided by June 1, 2009)</u>

- Reason loans evaluated for a modification were not modified, or that trial modification was not completed
- Status and disposition of eligible loans not modified, including trial mods not completed
- Status and disposition of loans that were modified but failed to remain in good standing because they became 90 or more days delinquent
- Second liens – flag for presence of a second lien; source of information (e.g., credit report); available terms (e.g., fixed vs. ARM; closed- vs. open-end); owner; and payoff. Continuous tracking of second lien status is not required.
- Purpose of loan (e.g., home purchase, refinance, cash-out refi)
- Information about foreclosure suspension
- Information about reliance on non-borrower household income
- Flag for borrower in bankruptcy at time of modification
- Flag for borrower in loss mitigation prior to modification
- Information about involvement of a third party representing the borrower
- Information about mortgage insurance

# EXHIBIT K

# THE PRIVATE SECTOR AND GOVERNMENT RESPONSE TO THE MORTGAGE FORECLOSURE CRISIS

# HEARING

BEFORE THE

## COMMITTEE ON FINANCIAL SERVICES

## U.S. HOUSE OF REPRESENTATIVES

ONE HUNDRED ELEVENTH CONGRESS

FIRST SESSION

DECEMBER 8, 2009

Printed for the use of the Committee on Financial Services

**Serial No. 111–93**



U.S. GOVERNMENT PRINTING OFFICE

56–236 PDF                    WASHINGTON : 2010

For sale by the Superintendent of Documents, U.S. Government Printing Office
Internet: bookstore.gpo.gov   Phone: toll free (866) 512–1800; DC area (202) 512–1800
Fax: (202) 512–2104  Mail: Stop IDCC, Washington, DC 20402–0001

TESTIMONY OF

JACK SCHAKETT

CREDIT LOSS MITIGATION STRATEGIES EXECUTIVE

BANK OF AMERICA HOME LOANS

Before the

HOUSE FINANCIAL SERVICES COMMITTEE

WASHINGTON, DC

DECEMBER 8, 2009

Chairman Frank, Ranking Member Bachus, and Members of the Committee, thank you for the opportunity to update you on Bank of America's loan modification efforts and to discuss areas where we can work together to help more borrowers stay in their homes.

I am Jack Schakett, Bank of America's Credit Loss Mitigation Strategies Executive. I report to Bank of America Home Loans President, Barbara Desoer, and have responsibility for foreclosure prevention programs for a mortgage servicing portfolio of nearly 14 million loans.

## Bank of America Making Home Affordable Performance

Bank of America is proud to be a partner in the Administration's Making Home Affordable program. Under the Home Affordable Refinance Program (HARP), Bank of America is the industry leader – providing refinancing through this process to more than 100,000 customers. And leveraging the Home Affordable Modification Program (HAMP), we now have more than 160,000 customers enrolled in a trial modification – leading the industry, as of October, in the number of active trials and offers extended. This record demonstrates our strong commitment to the program's success and to Treasury's leadership.

HAMP is the first loan modification solution we consider for borrowers who meet the initial eligibility requirements for the program. HAMP has proven a valuable tool that complements the aggressive loan modification programs we already had in place. Over the last two years, our own loan modification efforts have helped an additional 450,000 Bank of America customers. Combined with the HAMP program, these efforts have helped nearly 615,000 homeowners.

Importantly, Bank of America is not proceeding with foreclosure sales for customers who may be eligible for a modification under HAMP or our other modification programs and with whom we have been able to establish contact. Those holds remain in place during the time that it takes us to evaluate the borrower and through the trial modification period.

None of this is to say that there have not been problems. In over 100,000 calls a day, we hear from customers - their concerns and frustrations. We believe we have improved significantly our ability to handle the large volumes associated with these programs and are focused on constant enhancements. These are difficult times for customers and our intent is to make this as easy and understandable for them as we can.

As the largest servicer in America, we applaud the U.S. Treasury's continued efforts to ensure the success of these important programs and their determination to work as partners to achieve our common goal of keeping people in their homes.

Today, I'd like to discuss with the Committee two areas where we have gaps to close, and where we have the opportunity to make adjustments that will enable servicers to assist even more distressed homeowners.

First, a status report on the conversion of trial modifications to permanent. And second, a discussion of our HAMP progress overall and recommended enhancements to the program to help more borrowers.

2

**Trial to Permanent Modification Conversion Status and Challenges**

On Monday, December 7, Bank of America participated in the Servicer CEO Summit hosted by U.S. Treasury Secretary Timothy Geithner. We fully share Treasury's commitment to convert successful trial modifications to permanent as quickly as possible.

In support of that commitment, Bank of America is focusing on assisting customers to collect and provide all the documents and information required for the underwriting necessary for a successful conversion. Otherwise, homeowners are at risk of missing this opportunity to obtain a HAMP loan modification, an outcome none of us want.

As this committee knows from prior hearings, in addition to customers making three timely trial payments, the servicer must fully underwrite the permanent modification by obtaining all required documentation. This includes verifying income, occupancy status, and tax returns. The single biggest obstacle to a quick and successful conversion is obtaining the required financial information to underwrite the permanent modification. When borrowers originally entered their trial modifications they were not required to provide all the documents necessary for approval of a permanent modification. They were told that in order to qualify for a permanent modification they must provide all such documents during the trial period.

Bank of America has approximately 65,000 customers who have made more than three trial modification payments on time and their modifications are set to expire on December 31, 2009. Unfortunately, of those customers, 50,000 have either not submitted some or all of the required documents or have submitted all their required documents, but the documents reveal discrepancies that require an additional response from the customer. It is unclear why this has happened to such a high degree; however, several factors likely contributed to this, including ineffective communications with customers, shortcomings in document maintenance, misunderstandings about program requirements, and the inability to comply by some borrowers.

Our focus now is to make sure that every customer who has successfully made three or more trial modifications payments understands their document obligations and has an effective method for completing all the necessary requirements.

For these customers, Bank of America last week sent by express mail an urgent request for the documents needed to complete the process and the time frame required to avoid losing the Treasury's modification program benefits. We included a return prepaid express mail envelope to make the process as easy and expeditious as possible. We choose written communication and express mail packages to reduce the risk of misunderstanding, lost faxes or other issues associated with document collection, a part of the process that has been a source of customer frustration and where we have worked hard to improve.

While we manage extraordinary volume, we are doing everything we can to ensure optimal efficiency of all document control and management. Bank of America launched fax-to-image technology employed solely for the HAMP program. Once we obtain the documentation, we have the necessary staffing to complete the review and process the permanent conversion, and we will continue to add capacity as needed.

We will repeat the express mail notification again next week for any customers who still lack completed documentation and are also looking at ways we can partner with housing counselors to work face-to-face with customers to help them through the document submission process.

For the 15,000 customers who have provided all required information, we are experiencing a high conversion rate, with denials predominantly resulting from either income differences from what was stated by the borrower at the time of trial modification or discovery that the property is no longer owner-occupied, a requirement of the program.

We applaud the announcement by Treasury last week to partner with servicers to help heighten awareness of the need to promptly follow through with submitting documentation and to make it a priority to meet with the notary to sign the final loan modification agreement.

Consistent with these efforts, Bank of America is maintaining the same sense of urgency. By the time our trial modification participants reach their HAMP expiration date, Bank of America will have made about ten reminder phone calls and sent — at least twice — a summary of required documents and a postage-paid express mail package through which they can return their documents. This is in addition to the original trial modification mailing we send customers when they enter the program.

We have dedicated substantial resources to these efforts including the expansion of our default management staffing to nearly 13,000. We have also employed representatives of Bank of America in key markets to attempt face-to-face outreach to customers who have failed to send in required documents, and we have moved hundreds of mortgage loan officers over to servicing to assist in helping customers convert to permanent modifications. In many instances, we employ "mobile" notaries so customers can sign the documents at a time and place of their choosing to remove some potential confusion and to make sure it is done in sufficient time. We also are placing advertising in major markets with a high density of customers in active trial modifications, encouraging them to be responsive to our attempts to help them sustain homeownership.

We have increased our other customer outreach efforts as well. Since January of this year, Bank of America has participated in more than 215 community outreach events to assist distressed borrowers in 30 states. We also have partnered with three national nonprofits, the National Council of La Raza, the National Urban League, and the National Coalition for the Asian Pacific American Community, in the creation of the Alliance for Stabilizing Communities. We provided funding in support of this national coalition and its work to hold 40 housing rescue fairs over the next two years in 24 communities hardest hit by the foreclosure crisis.

In September, we launched a Bank of America Home Loans Assistance website to provide our customers easy online access to gain answers to their questions about the loan modification process — http://homeloans.bankofamerica.com/homeloanhelp.

Despite these efforts, it is clear that some portion of our 65,000 customers who are facing a December 31 deadline will be unable to complete the process, get the documents signed and notarized and return the required information by the deadline. Having some way to

4

accommodate these customers within the HAMP program would be helpful, given they were able to achieve substantial compliance with the requirements.

Customers who narrowly miss the deadline will fall into two primary groups:

- Customers that as of December 31, will have all their documentation in and the conversions are set, but they have not signed the final modification document (notary and customer have not met) but will do so shortly after the deadline.
- And, customers that as of December 31, will have all their documentation in, but we are still working with them on issues identified in the underwriting process, and again the final modification documents will be signed shortly after the deadline.

A third group of customers we believe should be considered for special consideration are those who made all of their trial payments but did not make the last payment "timely" as defined by program guidelines, but today are current and all other documentation issues are resolved.

Bank of America is working with Treasury to include these customers within the HAMP program with the same benefits they otherwise would receive. If that is not possible, Bank of America will still attempt to provide these customers with the same affordable payment and modification terms they would have received under HAMP, but through our own programs. The only difference for the customer will be the loss of the annual performance payments the government provides for the first five years.

### Overall Success of HAMP

In addition to the focus on permanent conversions, we would like to improve the overall effectiveness of HAMP by offering for consideration areas where the program could be enhanced to help more customers.

Our most recent data provided to Treasury indicates approximately 600,000 customers are potentially eligible for the HAMP program. This population does not include borrowers we have determined do not qualify for HAMP such as where the home is no longer owner occupied

Of those potentially eligible, we have made trial offers to 252,000 customers – nearly half. Of those to whom we have extended offers, 160,000 – or 63% - have started a trial modification by making their first payment. As we continue to pursue all methods of contact, we are hopeful these strong results will improve even further.

As these numbers demonstrate, HAMP has been largely successful in meeting its designed objective, which has been to assist owner-occupied borrowers who have experienced a hardship, or an increase in their loan payment, resulting in an unaffordable monthly housing payment exceeding 31% of their monthly income, and who, with help, can maintain ownership and occupancy of their homes.

However, the program was not designed to assist borrowers who have vacated their home or no longer occupy the home as their principal residence. Nor was the program structured to assist

5

the unemployed or those who already have a relatively affordable housing payment of less than 31% of their income.  Out of our HAMP eligible population, as recently defined by Treasury, of the customers we've talked with, 55% are known to fall into one of these four categories.

Those figures represent the depth of the nation's recessionary impacts on homeowners, not the failure of the government program or the efforts of participating mortgage servicers.

Bank of America believes it is necessary to provide solutions to these customer segments that fall outside HAMP's target reach – and we are doing so.  We have non-HAMP options we consider to avoid foreclosure including modification programs for non-owners and borrowers with a debt-to-income ratio below 31%, and importantly, forbearance programs for the unemployed.

We also are working with Treasury to expand HAMP to assist in meeting these same challenges - specifically including a program for the unemployed and allowance for a housing ratio less than 31% for low-to-moderate income borrowers.

The benefit of having Treasury take the lead to address these challenges is creating an industry standard that helps all customers and provides investor incentive to help more borrowers qualify. In any case, Bank of America will continue to provide solutions to these customers.

Our goal is to keep as many customers in their homes as possible.  We will exhaust every available option, including short sales and deeds in lieu, when a homeowner chooses to sell their property or has no other option except foreclosure.  We appreciate Treasury's recently released final guidance on short sales and are pleased to say we have already adopted many of the principles outlined.

## Conclusion

At Bank of America, we continue to look critically at the loan modification process, and we are listening to customers, community partners, and other stakeholders about how we can improve. We understand the urgency to offer solutions – not only for the customers we serve – but to further encourage the housing recovery that has begun to take root.

We will continue to pursue transformative initiatives that increase the number of customers receiving assistance, enhance the sustainability of the loans and improve the experience for customers throughout the process.

We appreciate the continued strong support and partnership from the Administration and Congress to reach the goal we all share to help as many of the individuals and families we serve stay in their homes.

Thank you, and I would be happy to answer any questions.

# EXHIBIT L

**Bank of America** ≫ Home Loans

| Loan Assistance Home | Loan Assistance Solutions | Additional Support | My Status & Tools |

## Frequently Asked Questions

# Know the facts to be better prepared

Select a topic:  Foreclosure                                    Go                          Print page

## Frequently Asked Questions

I would rather sell my home than lose it to foreclosure . . . is this possible?

Yes. There are options to foreclosure. A short sale or a deed in lieu may both be better alternatives to a foreclosure. Contact a specialist right away to explore all your options.

I want to try to get a home loan modification under the Making Home Affordable program, but I'm afraid that my lender will go ahead with the foreclosure while I'm trying to make it happen. Can I get more time to explore this option?

Yes. While we review your eligibility for the program, your loan will not go to foreclosure sale. When you enter a trial plan under the program, your loan will not be referred to foreclosure, and any pending foreclosure proceeding will not go to sale.

**Bank of America > Home Loans > Home Loan Assistance**

**Loan Assistance Solutions**
Refinance
Forbearance
Reverse Mortgage
Tax & Insurance Help with a Reverse Mortgage
Short Sale
Deed In Lieu
Foreclosure
National Homeownership Retention Program

Home Affordable Refinance
Home Affordable Modification
FHA Home Affordable Modification
Home Affordable Foreclosure Alternatives

**Additional Suppor**
Upcoming Events
Avoiding Scams
Homeowner Counse
Frequently Asked Q
Glossary

Home | Privacy & Security | Site Map

# EXHIBIT M

Foreclosure Help & Foreclosure Alternatives | Bank of America          http://homeloanhelp.bankofamerica.com/en/foreclosure.html

## Bank of America ➤➤ Home Loans

Home Loan Assistance

Home   Locations   Contact Us   Sign In

| Loan Assistance Home | Loan Assistance Solutions | Additional Support | My Status & Tools |

# Foreclosure



## Understanding the foreclosure process

Knowing what to expect can better prepare you to leave your property and move forward. We'll help guide you through the process and, if we can't find an alternative solution for you, offer you assistance with your transition out of your property.

| What is it? | Are there alternatives? | FAQs |

**Additional Support**

▸ Upcoming Events
▸ Avoiding Scams
▸ Homeowner Counseling Services
▸ Frequently Asked Questions
▸ Glossary

**My Status & Tools**

Call Us

### Home Loan Assistance Frequently Asked Questions                    Print page

**UPDATE: As of October 18, 2010 we have completed part of our foreclosure review.**
Bank of America has completed the review of our foreclosure process for residential properties in 23 states that follow the judicial foreclosure process. We will continue to delay residential foreclosure sales in the remaining 27 states until we have finished the review. Our assessment continues to show that the basis for our past foreclosure decisions is accurate in both judicial and non-judicial states. Read More »

**I would rather sell my home than lose it to foreclosure... is this possible?**

Yes, there are alternatives to foreclosure. A short sale or a deed in lieu may both be better alternatives to a foreclosure. Contact a specialist right away to explore all your options.

**I want to try to get a home loan modification under the Making Home Affordable program, but I'm afraid that my lender will go ahead with the foreclosure while I'm trying to make it happen. Can I get more time to explore this option?**

Yes. While we review your eligibility for the program, your loan will not go to foreclosure sale. When you enter a trial plan under the program, your loan will not be referred to foreclosure, and any pending foreclosure proceeding will not go to sale.

Bank of America > Home Loans > Home Loan Assistance

| **Loan Assistance Solutions** | | **Additional Support** | **My Status & Tools** |
|---|---|---|---|
| Refinance | Home Affordable Refinance | Upcoming Events | Helpful Forms & Documents |
| Forbearance | Home Affordable Unemployment Program | Avoiding Scams | Check My Loan Status |
| Home Equity Assistance | Home Affordable Modification | Homeowner Counseling Services | |
| Reverse Mortgage | FHA Home Affordable Modification | Frequently Asked Questions | |
| Tax & Insurance Help with a Reverse Mortgage | Home Affordable Second Lien Modification | Glossary | |
| Short Sale | Home Affordable Foreclosure Alternatives | | |
| Deed in Lieu | | | |
| Foreclosure | | | |
| National Homeownership Retention Program | | | |

Home | Privacy & Security | Site Map

Bank of America, N.A. Member FDIC. Equal Housing Lender 🏠
© 2010 Bank of America Corporation. All rights reserved.

# EXHIBIT N

**Help for America's Homeowners** 

MAKING HOME AFFORDABLE

*Supplemental Directive 10-02*                    *March 24, 2010*

## Home Affordable Modification Program – Borrower Outreach and Communication

### Background

In Supplemental Directive 09-01, the Treasury Department (Treasury) announced the eligibility, underwriting and servicing requirements for the Home Affordable Modification Program (HAMP). Under HAMP, servicers apply a uniform loan modification process to provide eligible borrowers with sustainable monthly payments for their first lien mortgage loans. This Supplemental Directive represents an ongoing effort to improve program effectiveness by amending policies and procedures related to borrower outreach and communication, especially with respect to the initiation and continuation of foreclosure actions and extending HAMP benefits to borrowers who have filed for bankruptcy court protection. These changes become effective on June 1, 2010. The changes set forth herein do not abridge a servicer's ability to service delinquent loans in accordance with industry standards.

The significant changes described in this Supplemental Directive include:

- Clarification of the requirement to solicit proactively all borrowers whose first mortgage loans are potentially eligible for HAMP and who have two or more payments due and unpaid. Reasonable solicitation efforts are defined.

- Prohibition against referral to foreclosure until either: (i) a borrower has been evaluated and determined to be ineligible for HAMP; or (ii) reasonable solicitation efforts have failed.

- A requirement that a servicer, in certain specific circumstances, allow a 30-day borrower response period following issuance of a Non-Approval Notice before a foreclosure sale may be conducted.

- A requirement that a servicer provide a written certification to the foreclosure attorney or trustee stating that a borrower is not HAMP-eligible before a foreclosure sale may be conducted.

- A requirement that servicers must consider borrowers in active bankruptcy for HAMP if a request is received from the borrower, borrower's counsel or bankruptcy trustee.

- Clarification of the requirement that servicers use reasonable efforts to obtain approval from investors to participate in HAMP.

This Supplemental Directive provides guidance to servicers of first lien mortgage loans that are not owned or guaranteed by Fannie Mae or Freddie Mac (Non-GSE Mortgages). Servicers of first lien mortgage loans that are owned or guaranteed by Fannie Mae or Freddie Mac should refer to the related HAMP guidelines issued by the applicable GSE.

## Borrower Communication

**Borrower Solicitation**
Each servicer must have clear and comprehensive internal written policies for identification and solicitation of borrowers who are potentially eligible for HAMP based on information in the servicer's possession. These procedures should follow investor guidelines and comply with all contractual restrictions and with applicable laws, rules and regulations, including, but not limited to, the Fair Debt Collection Practices Act.

Servicers must pre-screen all first lien mortgage loans where two or more payments are due and unpaid to determine if they meet the basic criteria for consideration under HAMP (one-to-four unit residential property, occupied by the borrower as his or her principal residence, not vacant or condemned, originated on or before January 1, 2009, unpaid principal balance does not exceed $729,750[1] and not previously modified under HAMP). Servicers must proactively solicit for HAMP any borrower whose loan passes this pre-screen, unless the servicer has documented that the investor is not willing to participate in HAMP pursuant to the "Investor Solicitation" section of this Supplemental Directive.

Solicitation must include written communication clearly describing HAMP. Use of the form of solicitation letter available on www.HMPadmin.com shall satisfy this requirement. The servicer's HAMP solicitation may also identify other options potentially available to help the borrower cure the delinquency and retain homeownership. A servicer is deemed to have made a "Reasonable Effort" to solicit a borrower if over a period of at least 30 calendar days: (1) the servicer makes a minimum of four telephone calls to the last known phone numbers of record, at different times of the day; and (2) the servicer sends two written notices to the last address of record by sending one letter via certified/express mail or via overnight delivery service (such as Federal Express or UPS) with return receipt/delivery confirmation and one letter via regular mail. Any contact with eligible borrowers, whether by telephone, mail or otherwise, must (1) advise borrowers that they may be eligible for HAMP; (2) clearly describe the Initial Package required to be submitted by the borrower pursuant to Supplemental Directive 10-01 and state what other information the servicer needs to complete the HAMP analysis; (3) provide a toll-free telephone number through which the borrower can reach a servicer representative; and (4) identify any unique requirements the servicer may have established for submission of an Initial Package received later than 30 calendar days prior to a scheduled foreclosure sale date. All contact attempts must be documented in the servicing file. If the servicer has documentation evidencing that it satisfied the Reasonable Effort standard for HAMP prior to the effective date of this Supplemental Directive, re-solicitation of the borrower is not required.

---

[1] Maximum loan limit for one unit dwelling. 2 units - $934,200; 3 units - $1,129,250; 4 units - $1,403,400.

Successful efforts by a servicer to communicate with the borrower or co-borrower about resolution of the delinquency are termed "right party contact" for purposes of this Supplemental Directive.  If right party contact is established and the borrower expresses an interest in HAMP, the servicer must send a written communication to the borrower via regular or electronic mail that clearly describes the Initial Package required to be submitted by the borrower to request a HAMP modification.  The communication should:

- Describe the income evidence required to be evaluated for HAMP;

- Provide the Request for Modification and Affidavit (RMA) (or other proprietary financial information form substantially similar in content to the RMA and, if necessary, a Hardship Affidavit); and

- Include an Internal Revenue Service (IRS) Form 4506T-EZ (or IRS Form 4506-T, if necessary).

The communication should also include clear language stating that during the HAMP evaluation the home will not:  (i) be referred to foreclosure; or (ii) be sold at a foreclosure sale if the foreclosure process has already been initiated.  In the communication, the servicer must include a specific date by which the Initial Package must be returned, which must be no less than 15 calendar days from the date of the communication.  Electronic mail for this purpose may only be sent to an email address provided by the borrower when right party contact was made.  Such email address must be documented in the servicing file.

If right party contact is established prior to satisfaction of the Reasonable Effort standard, the servicer must continue to take steps to satisfy the Reasonable Effort standard until the Initial Package is submitted by the borrower.

If right party contact is established but the borrower does not submit an Initial Package, the servicer must resend the Initial Package communication.  Again, the servicer must include a specific date by which the Initial Package must be returned, which must be no less than 15 calendar days from the date of the second communication.  If the borrower does not respond by providing an Initial Package within the required time period set forth in the second communication, the servicer may determine the borrower to be ineligible for HAMP.

If right party contact is established but the borrower submits an incomplete Initial Package within the required time period, the servicer must comply with the Incomplete Information Notice requirements set forth in Supplemental Directive 10-01.  If the borrower does not respond to either the 30-day Incomplete Information Notice or the 15-day Incomplete Information Notice by providing a complete Initial Package within the required time period, the servicer may determine the borrower to be ineligible for HAMP.

The servicer is not required to send an Initial Package if, as a result of discussions with the borrower, the servicer determines that the borrower does not meet the basic eligibility criteria for HAMP as described in Supplemental Directive 09-01, or the servicer determines that the borrower's monthly mortgage obligation (including principal interest, taxes, insurance and

homeowner's association fee, if applicable) is substantially less than 31% of the borrower's gross monthly income. Such decision must be documented in the applicable servicing file.

**Other Borrower Communication**

As set forth in Supplemental Directives 09-07 and 10-01, servicers must acknowledge the Initial Package within 10 business days of receipt through a written communication to the borrower that includes a description of the servicer's evaluation process and timeline. Additionally, the communication must include clear language that states that during the HAMP evaluation the home will not: (i) be referred to foreclosure; or (ii) be sold at a foreclosure sale if the foreclosure process has already been initiated. If the Initial Package is received from the borrower via email, the servicer may email the acknowledgement to the same email address from which the Initial Package was received or other email address designated by the borrower in the Initial Package.

Servicer communications should provide the borrower with clear written information designed to help the borrower understand the modification process in accordance with Supplemental Directive 09-01. These communications must provide a toll-free telephone number where the borrower can reach a representative of the servicer capable of providing specific details about the HAMP modification process. The hours of operation for the toll-free telephone number should be listed.

Servicers must have adequate staffing, written procedures, resources and facilities for receipt, management, retention and retrieval of borrower documents to ensure that borrowers are not required to submit multiple copies of documents. Servicers must accept the RMA and other required verification documents submitted on behalf of borrowers by HUD-approved housing counseling agencies, non-profit consumer advocacy organizations, legal guardians, powers of attorney or legal counsel when the borrower has provided written authorization or provides written authorization contemporaneously with the submission of the RMA. The borrower is considered to have provided written authorization if a copy of the power of attorney, order of guardianship, or other legal papers authorizing the third party to act on behalf of the borrower are provided. Written authorization may be supplanted by the legal documents authorizing a third party to act more generally on behalf of the borrower in cases of disability or borrowers unavailable due to active duty military service.

Servicers must have written procedures and personnel in place to provide timely and appropriate responses to borrower inquiries and complaints in connection with HAMP within the timelines specified in this and previous Supplemental Directives. These procedures must include a process through which borrowers may escalate disagreements to a supervisory level, where a separate review of the borrower's eligibility or qualification can be performed.

## Foreclosure Actions

The following guidance replaces in its entirety the guidance set forth on page 14 of Supplemental Directive 09-01 under the heading "Temporary Suspension of Foreclosure Proceedings".

**Prohibition on Referral and Sale**

A servicer may not refer any loan to foreclosure or conduct a scheduled foreclosure sale *unless* and *until* at least one of the following circumstances exists:

- The borrower is evaluated for HAMP and is determined to be ineligible for the program; or

- The borrower is offered a trial period plan, but fails to make a trial period payment by the last day of the month in which such payment is due; or

- The servicer has established right party contact, has sent at least two written requests asking the borrower to supply required information in accordance with this Supplemental Directive and has otherwise satisfied the Reasonable Effort solicitation standard, and the borrower failed to respond by the dates indicated in those requests; or

- The servicer has satisfied the Reasonable Effort solicitation standard without establishing right party contact; or

- The borrower or co-borrower states he or she is not interested in pursuing a HAMP modification and such statement is reflected by the servicer in their servicing system.

**Borrower Response Period**

Supplemental Directive 09-08 describes circumstances in which a written Non-Approval Notice must be provided to borrowers who have not been approved for HAMP. The servicer may not conduct a foreclosure sale within the 30 calendar days after the date of a Non-Approval Notice or any longer period required to review supplemental material provided by the borrower in response to a Non-Approval Notice unless the reason for non-approval is (1) ineligible mortgage, (2) ineligible property, (3) offer not accepted by borrower/request withdrawn or (4) the loan was previously modified under HAMP.

A model clause describing these rights is attached as Exhibit A. Use of the model clause is optional; however, it illustrates the level of specificity that is deemed to be in compliance with the language requirements of this Supplemental Directive.

**Halt of Existing Foreclosure Actions During a Trial Period Based on Verified Income**

With respect to a borrower who submits a request for HAMP consideration after a loan has been referred to foreclosure, the servicer shall, immediately upon the borrower's acceptance of a trial period plan based on verified income as described in Supplemental Directive 10-01 and for the duration of the trial period, take those actions within its authority that are necessary to halt further activity and events in the foreclosure process, whether judicial or non-judicial, including but not limited to refraining from scheduling a sale or causing a judgment to be entered.

The servicer shall not be in violation of this instruction to the extent that: (a) a court with jurisdiction over the foreclosure proceeding (if any), or the bankruptcy court in a bankruptcy case, or the public official charged with carrying out the activity or event, fails or refuses to halt some or all activities or events in the matter after the servicer has made reasonable efforts to

move the court or request the public official for a cessation of the activity or event; (b) the servicer must take some action to protect the interests of the owner, investor, guarantor or servicer of the loan in response to action taken by the borrower or other parties in the foreclosure process; or (c) there is not sufficient time following the borrower's acceptance of the trial period plan for the servicer to halt the activity or event, provided that in no event shall the servicer permit a sale to go forward.  The servicer must document in the servicing file if any of the foregoing exceptions to the requirement to halt an existing foreclosure action are applicable.

### Deadline for Suspension of Foreclosure Sales

When a borrower submits a request for HAMP consideration after a foreclosure sale date has been scheduled and the request is received no later than midnight of the seventh business day prior to the foreclosure sale date (the "Deadline"), the servicer must suspend the sale as necessary to evaluate the borrower for HAMP. Servicers are not required to suspend a foreclosure sale when:  (1) a request for HAMP consideration is received after the Deadline; (2) a borrower received a HAMP modification and lost good standing; (3) a borrower received a HAMP offer and failed to make one or more payments under the trial period plan by the last day of the month in which it was due; or (4) a borrower was evaluated based upon an Initial Package and determined to be ineligible under HAMP requirements.

The servicer shall not be in violation of this instruction to the extent that a court with jurisdiction over the foreclosure proceeding (if any), or the bankruptcy court in a bankruptcy case, or the public official charged with carrying out the activity or event, fails or refuses to halt the sale after the servicer has made reasonable efforts to move the court or request the public official for a cessation of the sale.  The servicer must document in the servicing file if the foregoing exception to the requirement to suspend an existing foreclosure sale is applicable.

A borrower will be deemed to have requested consideration for HAMP when a complete Initial Package (i.e., RMA, Form 4506T-EZ, required evidence of income) is received by the servicer or its foreclosure attorney/trustee prior to the Deadline.  However, the servicer may establish additional requirements for requests received later than 30 calendar days prior to a scheduled foreclosure sale date, including, for example, a requirement that a complete Initial Package be delivered through certified/express delivery mail with return receipt/delivery confirmation to either the servicer or the foreclosure attorney/foreclosure trustee.  These requirements must be posted on the servicer's website and communicated to the borrower in writing in accordance with the Borrower Solicitation requirements of this Supplemental Directive or through other written communication.

If the borrower contacts the servicer prior to the Deadline, the servicer must inform the borrower of the Deadline and any submission requirements.

### Mitigating Foreclosure Impact

The servicer must take the following action to mitigate foreclosure impact:

- **Simultaneous Trial Period Plan and Foreclosure Explanation.**  When a borrower is simultaneously in foreclosure and is either being evaluated for HAMP or is in a trial period plan, the servicer must provide the borrower with a written notification that

explains, in clear language, the concurrent modification and foreclosure processes and that states that even though certain foreclosure activities may continue, the home will not be sold at a foreclosure sale while the borrower is being considered for HAMP or while the borrower is making payments under a trial period plan.  Model language for this notification is attached as Exhibit B.  Use of the model language is optional; however, it illustrates the level of specificity that is deemed to be in compliance with the language requirements of this Supplemental Directive.

- **Foreclosure Attorney/Trustee Communication.**  Servicers must develop and implement written policies and procedures to provide notification to their foreclosure attorney/trustee regarding a borrower's HAMP status, including whether the borrower is potentially eligible for HAMP (and is subject to the Borrower Solicitation requirements of this Supplemental Directive), and whether the borrower is being evaluated for, or is currently in, a HAMP trial period plan.  Servicers must ensure that their foreclosure attorney/trustee adheres to all of the requirements of this Supplemental Directive with respect to referral to foreclosure, stay of foreclosure actions and suspension of foreclosure sales.

- **Certification Prior to Foreclosure Sale.**  Servicers must develop and implement written procedures applicable to all loans that are potentially eligible for HAMP (and are subject to the Borrower Solicitation requirements of this Supplemental Directive) that require the servicer to provide to the foreclosure attorney/trustee a written certification that (i) one of the five circumstances under the "Prohibition on Referral and Sale" section of this Supplemental Directive exists, and (ii) all other available loss mitigation alternatives have been exhausted and a non-foreclosure outcome could not be reached.  This certification must be provided no sooner than seven business days prior to the scheduled foreclosure sale date (the Deadline) or any extension thereof.

## Borrowers in Bankruptcy

Borrowers in active Chapter 7 or Chapter 13 bankruptcy cases must be considered for HAMP if the borrower,[2] borrower's counsel or bankruptcy trustee submits a request to the servicer.  With the borrower's permission, a bankruptcy trustee may contact the servicer to request a HAMP modification.  Servicers are not required to solicit these borrowers proactively for HAMP. Borrowers who are in a trial period plan and subsequently file for bankruptcy may not be denied a HAMP modification on the basis of the bankruptcy filing.  The servicer and its counsel must work with the borrower or borrower's counsel to obtain any court and/or trustee approvals required in accordance with local court rules and procedures.  Servicers should extend the trial period plan as necessary to accommodate delays in obtaining court approvals or receiving a full remittance of the borrower's trial period payments when they are made to a trustee, but they are not required to extend the trial period beyond two months, resulting in a total five-month trial

---

[2] Where the borrower filed the bankruptcy pro se, (without an attorney), it is recommended that the servicer provide information relating to the availability of a HAMP modification to the borrower with a copy to the bankruptcy trustee.  This communication should not imply that it is in any way an attempt to collect a debt.  Servicers must consult their legal counsel for appropriate language.

period. In the event of a trial period extension, the borrower shall make a trial period payment for each month of the trial period, including any extension month.

When a borrower in an active Chapter 13 bankruptcy is in a trial period plan and the borrower has made post-petition payments on the first lien mortgage in the amount required by the trial period plan, a servicer must not object to confirmation of a borrower's Chapter 13 plan, move for relief from the automatic bankruptcy stay, or move for dismissal of the Chapter 13 case on the basis that the borrower paid only the amounts due under the trial period plan, as opposed to the non-modified mortgage payments.

Borrowers who have received a Chapter 7 bankruptcy discharge in a case involving the first lien mortgage who did not reaffirm the mortgage debt under applicable law are eligible for HAMP. The following language must be inserted in Section 1 of the Home Affordable Modification Agreement:

> "I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement."

**Substitution of Income Documents**
When a borrower is in an active Chapter 7 or Chapter 13 bankruptcy, the servicer may accept copies of the bankruptcy schedules and tax returns (if returns are required to be filed) in lieu of the RMA and Form 4506T-EZ, and may use this information to determine borrower eligibility (with the income documentation). Servicers should request the schedules and tax returns from the borrower, borrower's counsel or bankruptcy court. If the bankruptcy schedules are greater than 90 days old as of the date that such schedules are received by the servicer, the borrower must provide updated evidence of income to determine HAMP eligibility. Additionally, either directly or through counsel, borrowers must provide a completed and executed Hardship Affidavit (or RMA).

**Waiver of Trial Period Plan**
Pending development of systems capability, and at the discretion of the servicer, borrowers in an active Chapter 13 bankruptcy who are determined to be eligible for HAMP may be converted to a permanent modification without completing a trial period plan if:

- The borrower makes all post-petition payments on their first lien mortgage loan due prior to the effective date of the Home Affordable Modification Agreement, and at least three of those payments are equal to or greater than the proposed modified payment;

- The modification is approved by the bankruptcy court, if required; and

- The trial period plan waiver is permitted by the applicable investor guidelines.

When payments under a bankruptcy plan are used in lieu of a trial period in accordance with these guidelines, the servicer and borrower will be eligible to accrue "pay for success" and "pay for performance" incentives for the length of a standard HAMP trial period.

Changes to several data reporting attributes under HAMP will be required to enable servicers to report a bankruptcy plan in lieu of a HAMP trial period. Servicers should look for a full description and detail of the data attributes for bankruptcy reporting to be posted on www.HMPadmin.com. Servicers may not exercise this waiver authority until the data elements are posted and the system capability exists to support this policy change.

## Continued HAMP Eligibility

Servicers are reminded of those situations when a borrower may seek reconsideration for a HAMP modification. As stated in Supplemental Directive 10-01, a borrower who has been evaluated for HAMP but does not meet the minimum eligibility criteria described in the "HAMP Eligibility" section of Supplemental Directive 09-01 or who meets the minimum eligibility criteria but is not qualified for HAMP by virtue of a negative NPV result, excessive forbearance or other financial reason, may request reconsideration for HAMP at any time prior to the Deadline if they experience a change in circumstance. In these cases, the servicer is obligated to consider the borrower's request pursuant to its obligations under the Servicer Participation Agreement (SPA).

A servicer's SPA obligation to offer the borrower a HAMP modification is considered satisfied, and the borrower is not eligible for a subsequent HAMP offer, if the borrower either (1) received a HAMP modification and lost good standing, or (2) the borrower received a HAMP offer and either failed to make one or more payments under trial period plan by the last day of the month in which it was due, or if applicable, failed to provide (i) all required documents by the end of the trial period; or (ii) the Home Affordable Loan Modification Agreement and all related documents by the last day of the month in which the Modification Effective Date occurs.

## Servicing Transfers of Loans in Foreclosure

The servicer may transfer a loan free and clear of all HAMP-related obligations under the SPA if one of the five circumstances under the "Prohibition on Referral and Sale" section of this Supplemental Directive exists with respect to such loan, and any applicable response period has elapsed, unless a borrower with continued HAMP eligibility requests consideration prior to the effective date of the servicing transfer. Such loans are not required to be transferred pursuant to the form of Assignment and Assumption Agreement attached as Exhibit D to the Servicer Participation Agreement. Servicers should refer to the "Transfers of Servicing" section of Supplemental Directive 09-01 for guidance regarding servicing transfers of loans modified pursuant to HAMP.

## Investor Solicitation

Within 90 days of executing a Servicer Participation Agreement (SPA), the servicer must review all servicing agreements to determine investor participation in the program. Within 30 days of identifying an investor as a non-participant, the servicer will contact the investor in writing at least once, encouraging the investor to permit modifications under HAMP.

Within 60 calendar days following the effective date of this Supplemental Directive, participating servicers must, if they have not already done so, provide to Fannie Mae, as Treasury's Program Administrator: (1) the number of investors for whom it services loans; (2) a list of those investors who do not participate in HAMP; and (3) the number of loans serviced for each investor that does not participate in HAMP.  Servicers that execute a SPA after the date of this Supplemental Directive must provide the investor participation list to Fannie Mae, as Treasury's program administrator, within 120 days of SPA execution.

Servicers are required to notify Fannie Mae, as Treasury's Program Administrator, of changes to the Investor Participation List within 30 calendar days of any change.

## Documentation

Servicers are required to maintain appropriate documentary evidence of their HAMP-related activities, and to provide that documentary evidence upon request to Freddie Mac as the Compliance Agent for Treasury.  As Compliance Agent, Freddie Mac will incorporate the additional requirements articulated in this Supplemental Directive into its compliance program. Servicers must maintain documentation in well-documented servicer system notes or in loan files for all HAMP activities addressed in this Supplemental Directive, including, but not limited to, the following:

- All HAMP related communications, whether verbal or written, with or to the borrower or trusted advisor (including but not limited to the dates of communications, names of contact person(s), and a summary of the conversation), including any email correspondence to or from the borrower.

- Pre-screening of loans for HAMP prior to referring any loan to foreclosure or conducting scheduled foreclosure sales.

- Postponement of scheduled foreclosure sales in applicable scenarios.

- Substitution of income documents for borrowers in active Chapter 7 or Chapter 13 bankruptcy.

- Waiver of the trial period plan for borrowers in active Chapter 13 bankruptcy.

- Policies and procedures required by this Supplemental Directive.

- Certification prior to foreclosure sale.

- Evidence of assessment of investor willingness to participate in HAMP and any specific outreach to investors on either a portfolio or loan-by-loan basis, including copies of any contracts with investors relied upon in denying HAMP modifications. This should include, where applicable, documentation relating to specific parameters or limitations on participation required by investors for steps in the waterfall.

- Evidence of receipt of the Initial Package from a borrower.

# EXHIBIT A
## BORROWER RESPONSE PERIOD

The model clause in this exhibit provides sample language that may be used to explain the borrower response period that exists after a borrower is issued a Non-Approval Notice unless the reason for non-approval is (1) ineligible mortgage, (2) ineligible property, (3) offer not accepted by borrower/request withdrawn or (4) the loan was previously modified under HAMP. Use of the model clause is optional; however, it illustrates a level of specificity that is deemed to be in compliance with language requirements of this Supplemental Directive.

> You have 30 calendar days from the date of this notice to contact [name of servicer] to discuss the reason for non-approval for a HAMP modification or to discuss alternative loss mitigation options that may be available to you. Your loan may be referred to foreclosure during this time, or any pending foreclosure action may continue.  However, **no foreclosure sale will be conducted and you will not lose your home** during this 30-day period [or any longer period required for us to review supplemental material you may provide in response to this Notice].

**EXHIBIT B**
**MODEL SIMULTANEOUS TRIAL PLAN-FORECLOSURE PROCESS EXPLANATION**

[Servicer Logo]

[Date]

[Name]
[Address 1]
[Address 2]

Dear [borrower and co-borrower name(s)]:

We are committed to helping you retain your home. That's why we are currently evaluating your mortgage for eligibility in the Home Affordable Modification Program ("HAMP") which would modify the terms of your loan and make your mortgage payments more affordable. Your loan has been previously referred to foreclosure and we will continue the foreclosure process while we evaluate your loan for HAMP.  However, **no foreclosure sale will be conducted and you will not lose your home** during the HAMP evaluation.

**HAMP Eligibility**
- If you are eligible for HAMP, you will enter into a "trial period". You will receive a Trial Period Plan Notice which will contain a new trial payment amount (this will temporarily replace your current mortgage payment during the HAMP trial period). To accept the Trial Period Plan, you must make your first trial payment by the specified due date. Once you accept, we will halt the foreclosure process as long as you continue to make your required trial plan payments.

- If you do not qualify for HAMP, or if you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice. In most cases, you will have 30 days to review the reason for non-approval and contact us to discuss any concerns you may have. During this 30-day review period, we may continue with the pending foreclosure action, but **no foreclosure sale will be conducted and you will not lose your home.**

**Important—Do not ignore any foreclosure notices.**
The HAMP evaluation and the process of foreclosure may proceed at the same time. You may receive foreclosure/eviction notices - delivered by mail or in person - or you may see steps being taken to proceed with a foreclosure sale of your home. While you will not lose your home during the HAMP evaluation, to protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. If you have any questions about the foreclosure process and the evaluation of your HAMP request, contact us at [XXX.XXX.XXXX]. If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance.

**Questions**
Call **XXX.XXX.XXXX** if you cannot afford to make your trial period payments, but want to remain in your home. Or if you have decided to leave your home, contact us—we have other options that may be able to help you avoid foreclosure. Additionally, if you have any questions about the foreclosure (or other legal notices that you receive), please call us for assistance. You can also call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673) if you need further counseling. They offer free HUD-certified counseling services in English and Spanish, and can help answer any questions you have.

Sincerely,
[Servicer Contact Person Name]
[Servicer Contact Person Title]
[Servicer Name]

# EXHIBIT O