# EXHIBIT W



Bankof America

**Conv Jumbo ARM-**
## REDACTED

### Workout Information

Print this page   Return to Account Details

**Documents Received**

No document found for this account

The above list is real-time and reflects the documents processed to date for this account. We may have received additional documents recently sent to us that have not been processed and therefore do not appear in the list. Please do not call us to check the status of a document not showing in the list as our representatives will not be able to provide any additional information then what is shown here. Thank you for your patience.

**Current Workout Status**

| | |
|---|---|
| Loan Modification | Hide Details |
| Workout Status Detail: | Your Loan Modification has been approved, and all collections activities have been suspended as a result of this approval. Next steps will include a call from a workout negotiator who will explain the terms and options of your approved workout including all conditions required for the final completion of the workout, such as upfront funds. You will also receive a package of documents in the mail. These documents are time sensitive and must be signed, notarized and returned to us in 10 days, including any required upfront funds. If you have not received your workout package and/or a phone call from your negotiator by 11/02/2009, please contact us. Please do not call back before 11/02/2009 as that may delay the process. Please respond promptly to any calls or requests that you may receive from Home Retention Department during this time period. Lack of response will cause your workout to be delayed or cancelled. Thank you. |
| Information as of: | 09/03/2009 |
| Workout stage: | Approved |

**Secure Area**

Accounts   Bill Pay   Transfers   Investments   Customer Service
Online Protection   Locations   Alerts   Mail   Help   Site Map   Sign Off

Bank of America, N.A. Member FDIC. Bank of America, N.A. and BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A., are Equal Housing Lenders
© 2009 Bank of America Corporation. All rights reserved.

# EXHIBIT X

CONS
CATHERINE CORTEZ MASTO
Attorney General
ERNEST D. FIGUEROA
Chief Deputy Attorney General
Nevada Bar No. 006295
100 North Carson Street
Carson City, Nevada 89701
775-684-1197
Attorneys for Plaintiff, State of Nevada

**FILED**

FEB 24   4 13 PM '09

CLERK OF THE COURT

## DISTRICT COURT
## CLARK COUNTY, NEVADA

STATE OF NEVADA )
)  Case No.: A 5 8 3 4 4 2
          Plaintiff, )  Dept. No.: X I I I
)
    vs. )
)
COUNTRYWIDE FINANCIAL CORPORATION, )
a Delaware corporation, )
)  **BUSINESS COURT REQUESTED**
          Defendant. )  **ARBITRATION EXEMPTION**
)  **Action in Equity**

## CONSENT JUDGMENT

Come now Plaintiff, STATE OF NEVADA, by and through its attorney, CATHERINE

CORTEZ MASTO, Attorney General, and her Chief Deputy, Ernest D. Figueroa, and

Defendant COUNTRYWIDE FINANCIAL CORPORATION, in the above entitled and

numbered cause.  Plaintiff STATE OF NEVADA and Defendant COUNTRYWIDE FINANCIAL

CORPORATION (collectively, the "Parties") hereby consent to the entry of this Consent

Judgment as set forth below, without trial or adjudication of any issue of fact or law.

This Court has jurisdiction to enter and enforce this Judgment.  Venue is proper in this Court.

The terms of this Consent Judgment ("Judgment") shall be governed by the laws of the

State of Nevada.

The parties voluntarily enter in this Judgment on the terms and conditions set forth

below:

///

1

# 1.   DEFINITIONS

1.1   *Usage.* The following rules apply to the construction of this Judgment:

(a)   the singular includes the plural and the plural includes the singular;

(b)   "include" and "including" are not limiting;

(c)   the headings of the Sections and subsections are for convenience and shall not constitute a part of this Judgment, and shall not affect the meaning, construction, or effect of the applicable provisions of this Judgment;

(d)   a reference in this Judgment or any Schedule to an Section, Exhibit, or Schedule without further reference is a reference to the relevant Section, Exhibit, or Schedule to this Judgment; and

(e)   words such as "hereunder," "hereto," "hereof," and "herein," and other words of like import shall, unless the context clearly indicates to the contrary, refer to the whole of this Judgment and not to any particular Section, subsection or clause hereof.

1.2   *Defined Terms.* The following capitalized terms shall have the following meanings in this Judgment unless otherwise required by the context or defined:

"*Affiliate*" means, with respect to any company, any company that controls, is under common control with, or is controlled by such company.

"*Affordability Equation*" has the meaning given to such term in Section 4.4.

"*Alt-A Residential Mortgage Loans*" means CFC Residential Mortgage Loans that are (a) not owned by a GSE; (b) not Subprime; (c) not a Pay Option ARM; (d) less than $400,000 in original principal amount; and (e) including documentation or other characteristics that make such loans not Federal Eligible.

"*Annual Increase*" means, with respect to any stated rate of interest, an annual increase in the stated rate of interest such that the aggregate scheduled payments of principal (if applicable) and interest in any year does not increase by more than 7.5% of the aggregate scheduled payments of principal and interest in the preceding year, subject to any stated interest rate cap.

///

2

1    "*ARMs*" means adjustable rate first-lien residential mortgage loans.

2    "*BAC*" means Bank of America Corporation.

3    "*Borrower*" means, with respect to any owner-occupied CFC Residential Mortgage

4  Loan, the obligors(s) on such loan.  No covenant or commitment herein is intended to require

5  a CFC Servicer to deal with more than one obligor on behalf of any Borrowers with respect

6  thereto.

7    "*CFC*" means Countrywide Financial Corporation.

8    "*CFC-Originated*" means, with respect to any residential mortgage loan, that such

9  residential mortgage loan is a first-lien residential mortgage that was originated on a retail

10  basis directly or indirectly by CFC or its subsidiaries or through brokers in their wholesale

11  lending channels.

12    "*CFC-Originated*" residential mortgage loans do not include CFC Purchased Loans.

13    "*CFC Purchased Loans*" means any first-lien residential mortgage loan originated by

14  unaffiliated third parties and directly or indirectly purchased by CFC or its subsidiaries through

15  their correspondent lending channels or otherwise, *provided* that such loan is serviced by a

16  CFC Servicer.

17    "*CFC Purchased Loans*" do not include CFC-Originated residential mortgage loans.

18    "*CFC Residential Mortgage Loans*" means any (i) CFC-Originated first-lien residential

19  mortgage loans, or (ii) CFC Purchased Loans, so long as, in each case, such loans are

20  serviced by a CFC Servicer.

21    "*CFC Servicer*" means CFC or any Affiliate of CFC that services CFC Residential

22  Mortgage Loans.

23    "*CLTV*" means, with respect to a first-lien residential mortgage loan as of the time

24  underwritten, the ratio of the sum of the unpaid principal balance of such mortgage loan *plus*

25  the unpaid principal balance on any second-lien mortgage to the Market Value of the

26  residential property that secures such mortgages.

27  ///

28  ///

3

"*Commencement Date*" means October 6, 2008.

"*Delinquent Borrower*" means, with respect to any Borrower, that the related CFC Residential Mortgage Loan (a) is Seriously Delinquent on or before the Termination Date, or (b) is subject to an imminent reset or Recast and, in the reasonable view of the CFC Servicer, as a result of such reset or Recast is reasonably likely to become Seriously Delinquent on or before the Termination Date.

"*Eligible Borrower*" has the meaning given to such term in Section 4.1.

"*Fannie Mae*" means Federal National Mortgage Association.

"*Fannie Rate*" means, as of any date, the Fannie Mae 30-year fixed rate 60-day delivery required net yield as of such date or if such rate is for any reason not available, a comparable rate published by another nationally recognized source.

"*Federal Eligible*" means, with respect to any first-lien residential mortgage loan that, at the time of origination, (a) such loan is or was eligible for sale to, or guaranty or insurance by, a federal agency, GSE or comparable federally-sponsored entity similar to a GSE, under then applicable guidelines of such agency, GSE or entity, or (b) such loan was made in connection with a program intended to qualify for credit under the Community Reinvestment Act of 1977.

"*Foreclosure Avoidance Budget*" has the meaning given to such term in Section 4.4(a).

"*Foreclosure Relief Program*" means the program under which certain Borrowers will be offered payments, as set forth in Section 6.

"*Foundation*" has the meaning given to such term in Section 7.

"*Freddie Mac*" means Federal Home Loan Mortgage Corporation.

"*GSE*" means a government-sponsored enterprise such as Fannie Mae or Freddie Mac.

"*Interest Rate Floor*" means, with respect to modification of a Qualifying Mortgage hereunder, (a) a rate of 3.5% per annum if the modification results in an interest-only

4

payment; or (b) a rate of 2.5% per annum if the modification results in a fully amortizing payment.

"*LTV*" means, with respect to a first-lien residential mortgage loan as of the time reviewed for eligibility for modification, the ratio of the unpaid principal balance of such mortgage loan to the Market Value of the residential property that secures such mortgage.

"*Market Value*" means, with respect to any residential mortgage loan, the value of the residential property that secures such mortgage loan as determined by a lender or servicer in reliance on an appraisal (whether based on an appraisal report prepared not more than 180 days before the date of determination, broker price opinion prepared not more than 120 days before the date of determination, or automated valuation model prepared not more than 90 days before the date of determination).

"*Office of the Attorney General*" means the Office of the Attorney General of the State of Nevada.

"*Pay Option ARMs*" means ARMs that, during an initial period (and subject to Recast), permit the borrower to choose among two or more payment options, including an interest-only payment and a minimum (or limited) payment.

"*Qualifying Mortgage*" has the meaning given to such term in Section 4.2.

"*Recast*" means, in the case of a Pay Option ARM, a contractual payment recast to a fully amortized payment based on a negative amortization trigger.

"*Relocation Assistance payment*" has the meaning given to such term in Section 5.1.

"*Seriously Delinquent*" means, with respect to any residential mortgage loan, that payments of interest or principal are 60 or more days delinquent.

"*Seriously Delinquent Borrower*" means, with respect to any Borrower that, on or before the Termination Date, the related CFC Residential Mortgage Loan is Seriously Delinquent.

"*Subprime 2, 3, 5, 7, and 10 Hybrid ARMs*" means Subprime Mortgage Loans that are 2, 3, 5, 7, and 10 Hybrid ARMs.

///

5

1    "*Subprime Mortgage Loans*" means first-lien residential mortgage loans that combine

2    higher risk features (such as low or no documentation, low equity, adjustable interest rates,

3    prepayment penalties, cash-out financing) with higher risk borrower profiles (lower FICO

4    scores, recent bankruptcies/foreclosures, major derogatory credit), resulting in a loan that

5    could not reasonably be underwritten and approved as a "prime" loan.  An existing CFC

6    Residential Mortgage Loan would be a "*Subprime Mortgage Loan*" if it is identified as such in

7    connection with a securitization in which it is part of the pool of securitized assets or, in the

8    case of a CFC Residential Mortgage Loan that is not included in a securitization, was

9    classified as being "subprime" on the systems of CFC and its subsidiaries on June 30, 2008.

10       "*Termination Date*" means June 30, 2012.

11       2.    **CFC SOLE OBLIGOR ON ALL OBLIGATIONS IN THIS JUDGMENT**

12       2.1    *Responsibility of CFC.*  Until the Termination Date (or such earlier date as is

13   specified herein), CFC is responsible to the other parties hereto for performance of all of the

14   undertakings in this Judgment, including the changes to the residential mortgage lending

15   practices described in Section 3, the loan modification programs described in Section 4, the

16   Relocation Assistance payments described in Section 5, the Foreclosure Relief Program

17   described in Section 6, and the reporting obligations described in Section 8.

18       2.2    *Absence of Defenses.*  It is not an excuse to the performance of the obligations

19   of CFC hereunder that it does not directly or indirectly engage in the business of originating

20   residential mortgage loans or in the business of servicing residential mortgage loans.  CFC is

21   responsible for the conduct of CFC Affiliates and CFC Servicers as specified hereunder

22   whether or not it controls such CFC Affiliates or CFC Servicers and the absence of such

23   control shall not be a defense to or otherwise excuse CFC's failure to perform hereunder.

24       2.3    *Remedies for Failure of CFC to Cause Performance.*  If there is a material

25   failure to perform the obligations under the loan modification programs described in Section 4,

26   the Relocation Assistance payments described in Section 5, the Foreclosure Relief Program

27   described in Section 6, or the reporting obligations described in Section 8 and such failure is

28   not promptly cured after notice by the Office of the Attorney General of the State of Nevada,

1   then the Office of the Attorney General may seek enforcement of this Judgment under Section

2   10.4, or, in the alternative, terminate this Judgment.  If the Office of the Attorney General

3   elects to terminate this Judgment, it shall no longer be bound by the release set forth in

4   Section 9.2.

## 3.   SERVICER PRACTICES

6       Until the Termination Date, CFC shall be responsible for the implementation of the

7   following by CFC Affiliates with respect to CFC Residential Mortgage Loans with respect to

8   Borrowers in the State of Nevada.

9       3.1   *Residential Mortgage Product Offerings.*

10       (a)   CFC Servicers will maintain robust processes for early identification and contact

11   with Borrowers who are having, or are reasonably expected to have, trouble making their

12   payments on CFC Residential Mortgage Loans.  Under these processes, when contact is

13   made with such Borrowers, an individualized evaluation of the Borrowers' economic

14   circumstances will be made to determine if alternatives to foreclosure are available, and

15   consistent with the directions of the investors, if applicable.

16       (b)   CFC Servicers will maintain the current practice of offering loan modifications or

17   other workout solutions to Borrowers who are 30 days or more delinquent in their payments,

18   who desire to remain in their homes, and who can afford to make reasonable mortgage

19   payments, subject to applicable investor guidance and approvals.

20       (c)   CFC's reports to the Office of the Attorney General under this Judgment will

21   include information on the numbers and types of workouts concluded on loans secured by

22   Borrower-occupied properties in the State of Nevada.

23       (d)   CFC Servicers will continue the current practice of regularly monitoring the

24   delinquency characteristics of the entire portfolio of CFC Residential Mortgage Loans,

25   including Alt-A Residential Mortgage Loans, loans with interest-only features, and other loans

26   to prime borrowers, to identify high-delinquency segments that may be appropriate for

27   streamlined or non-streamlined loan modification campaigns.  CFC shall be responsible for

28

7

1  providing reports to the Office of the Attorney General on the delinquency characteristics of

2  such loans, as provided herein.

3        (e)    With respect to Alt-A Residential Mortgage Loans, CFC acknowledges that the

4  Office of the Attorney General has expressed concerns about future delinquencies, and

5  agrees to provide the Office of the Attorney General notification whenever the nationwide rate

6  at which Borrowers on Alt-A Residential Mortgage Loans are 30 days or more delinquent in

7  their payments exceeds 150% of the delinquency rate for comparably-aged FHA-insured

8  loans serviced by CFC Servicers.  If such notice is required, CFC agrees to confer with the

9  Office of the Attorney General concerning Alt-A Residential Mortgage Loans delinquency

10  trends, including whether delinquencies are isolated in certain segments of the Alt-A

11  Residential Mortgage Loans portfolio (*e.g.,* loans with interest-only features, loans originated

12  at high CLTV), and concerning the possible deployment of streamlined foreclosure avoidance

13  solutions for such Borrowers.

14        (f)    Through July 1, 2009, a minimum of 3900 personnel shall be employed to assist

15  Borrowers with loan modifications and other foreclosure avoidance measures.

16        (g)    CFC Servicers will ensure that the values in any AVM system used to generate

17  electronic appraisals are regularly updated and periodically validated so as to provide

18  reasonable assurance as to the accuracy of resulting valuations.  Any validation will, as

19  appropriate, include back-testing of a representative sample of valuations against market data

20  on actual sales (where sufficient information is available).

21        (h)    Although the scope of the loan modification program in this Judgment is limited

22  to certain first lien Qualifying Mortgages, CFC acknowledges that (i) many Eligible Borrower-

23  occupied 1-to-4 unit residential properties are subject to second lien mortgages and (ii) the

24  existence of such junior liens may reduce the incentive of Borrowers to remain in their homes

25  and may impair Eligible Borrowers' ability to refinance Qualifying Mortgages.  CFC confirms

26  that it is engaged in developing best servicing practices with respect to first lien Qualifying

27  Mortgages secured by Eligible Borrower-occupied 1-to-4 unit residential properties that are

28  subject to second lien mortgages.

8

3.2   **Compliance.**  Understanding the circumstances and behaviors of lenders and brokers that may have contributed, in part, to the current mortgage crisis, CFC recognizes its responsibility to ensure the very highest degree of ethical conduct on the part of CFC's agents and employees.  CFC shall ensure that, (a) to the extent it resumes subprime lending, it will design and implement an effective compliance management program to provide reasonable assurance as to the identification and control of consumer protection hazards associated with such subprime lending activities, and (b) to the extent of its own lending activities (if any), it will create appropriate consumer safeguards to avoid unfair or deceptive activities or practices arising in connection with its interaction with brokers and other third parties.

4.   **LOAN MODIFICATIONS FOR DELINQUENT BORROWERS IN CERTAIN MORTGAGE PRODUCTS**

Until the Termination Date, CFC shall be responsible for ensuring that CFC Servicers attempt, on an ongoing basis, to qualify eligible Borrowers in specified mortgage products for affordable loan modifications in accordance with the following provisions:

4.1   **Eligible Borrowers.**  An *"Eligible Borrower"* is a Borrower who has a Qualifying Mortgage with a first payment date on or before December 31, 2007, that (a) is secured by an owner-occupied 1-to-4 unit residential property, (b) is serviced by a CFC Servicer, and (c) in the event that it is determined that a condition described in Section 4.10 has occurred, the applicable CFC Servicer has determined that such Borrower is in financial distress.  Eligible Borrowers are potentially eligible for loan modification relief under this Section 4.  A Borrower who does not occupy the 1-to-4 unit residential property that secures the Qualifying Mortgage is not an *"Eligible Borrower."*

4.2   **Qualifying Mortgages.**  The following CFC Residential Mortgage Loans are *"Qualifying Mortgages"* if the Borrower is an Eligible Borrower and the Borrower meets one of the specified delinquency profiles:

(a)   **Subprime 2, 3, 5, 7, and 10 Hybrid ARMs.**  A Subprime 2, 3, 5, 7, and 10 Hybrid ARM shall be a Qualifying Mortgage if the Eligible Borrower meets any one of the following delinquency profiles at the time considered for loan modification:

9

    (i)      The Eligible Borrower is a Seriously Delinquent Borrower and the LTV is 75% or more; or

    (ii)     The Eligible Borrower is a Delinquent Borrower and the LTV is 75% or more.

   (b)    **Pay Option ARMs.** A Pay Option ARM shall be a Qualifying Mortgage if the Eligible Borrower meets any one of the following delinquency profiles at the time considered for loan modification:

    (i)      The Eligible Borrower is Seriously Delinquent and the LTV is 75% or more; or

    (ii)     The Eligible Borrower is a Delinquent Borrower and the LTV is 75% or more.

   (c)    **Subprime First Mortgage Loans (Other than Subprime 2, 3, 5, 7, and 10 Hybrid ARMs).** A Subprime CFC Residential Mortgage Loan shall be a Qualifying Mortgage if the Eligible Borrower is a Seriously Delinquent Borrower and the LTV is 75% or more.

   4.3    **Loan Modifications to Be Considered.** Each Eligible Borrower shall be considered for a range of affordable loan modification options with respect to his or her Qualifying Mortgage. The loan modification options will include those described below and existing modification options, subject in each case to approval of the investor who owns the Qualifying Mortgage and the Affordability Equation as set forth in Section 4.4. Loan modification options for each category of Qualifying Mortgages are as follows:

   (a)    **Subprime 2, 3, 5, 7, and 10 Hybrid ARMs.** Qualifying Mortgages that are Subprime 2, 3, 5, 7, and 10 Hybrid ARMs will be eligible for loan modifications as follows, in no particular order:

    (i)      To the extent the HOPE for Homeowners Program is available, an FHA refinancing under the HOPE for Homeowners Program under the underwriting criteria applicable to that program.

    (ii)     For Eligible Borrowers (A) who become Seriously Delinquent following a reset, or (B) who are subject to an imminent reset and, in the reasonable

10

view of the CFC Servicer, as a result of such reset are reasonably likely to become Seriously Delinquent on or before the Termination Date (even though they are not Seriously Delinquent at the time of the modification), an unsolicited (subject to Section 4.10) restoration of the introductory rate for five years, without new loan documentation or an evaluation of the Eligible Borrower's current income.  Communications to Eligible Borrowers informing them of this modification will invite Eligible Borrowers to contact the applicable CFC Servicer if they do not believe they will be able to afford the introductory rate in order to be considered for more extensive relief under Sections 4.3(a)(iii) or 4.3(a)(iv).

(iii)   A streamlined, fully-amortizing loan modification subject to the Affordability Equation consisting of:

    (A)   until the fifth anniversary of the loan modification, a reduction of the interest rate to the (1) introductory rate or (2) lower (but not less than 3.5%); and

    (B)   on the fifth anniversary of the loan modification, an automatic conversion to a fixed rate mortgage for the remainder of the loan term at the higher of (1) the Fannie Rate and (2) the introductory rate.  If the new payment would not be affordable to the Eligible Borrower based on his or her income at the time of conversion, the Eligible Borrower will be considered for a single two year period of reduced-rate financing (in which case the conversion to a fixed rate mortgage will occur at the end of the seventh year).

(iv)   A streamlined loan modification subject to the Affordability Equation consisting of:

    (A)   modification of the Qualifying Mortgage to include a ten-year interest-only period;

11

(B) reduction of the interest rate to a rate no lower than the Interest Rate Floor, with an Annual Increase subject to an interest-rate cap as provided below in Section 4.3(a)(iv)(C); and

(C) an interest-rate cap for the remaining, fully-amortizing term of the Qualifying Mortgage at an annual interest rate equal to the introductory rate.

(b) **Pay Option ARMs.** Qualifying Mortgages that are Pay Option ARMs are eligible for the following loan modifications, in no particular order:

(i) To the extent the HOPE for Homeowners Program is available, an FHA refinancing under the HOPE for Homeowners Program under the underwriting criteria applicable to that program; or

(ii) A streamlined, fully-amortizing (except as provided in Section 4.3(b)(ii)(B)) loan modification subject to the Affordability Equation consisting of:

(A) elimination of the negative amortization feature;

(B) optional introduction of a ten-year interest-only period on the loan;

(C) reduction of the interest rate to a rate no lower than the Interest Rate Floor, with an Annual Increase subject to an interest rate cap of 7%; and

(D) if the Eligible Borrower owns only one residential property and the LTV is 95% or higher, a write down of the principal balance of the Qualifying Mortgage (but any write down of principal would not be in an amount greater than necessary to achieve an LTV of 95%).

(c) **Subprime Loans (Other than 2, 3, 5, 7, and 10 Hybrid ARMs).** Qualifying Mortgages that are Subprime Loans (Other than 2, 3, 5, 7, and 10 Hybrid ARMs) are eligible for the following loan modifications, in no particular order:

12

     (i)     To the extent the HOPE for Homeowners Program is available, an FHA refinancing under the HOPE for Homeowners Program under the underwriting criteria applicable to that program; or

     (ii)     A streamlined, fully-amortizing (except as provided in Section 4.3(c)(ii)(A)) loan modification within the limits of the Affordability Equation consisting of:

          (A)     optional introduction of a ten-year interest-only period on the loan;

          (B)     reduction of the interest rate on the mortgage to a rate no lower than the Interest Rate Floor, with an Annual Increase subject to an interest rate cap as provided below in Section 4.3(c)(ii)(C); and

          (C)     an interest-rate cap for the remaining term of the Qualifying Mortgage at an annual interest rate equal to (i) the fixed interest rate *less* 200 basis points, in the case of fixed-rate loans, and (ii) the remainder of the sum of the contractual index amount *plus* spread immediately before the first loan modification, *minus* 200 basis points, in the case of an ARM.

    4.4    ***Affordability Equation***.  Qualifying Mortgages will be considered for loan modifications in accordance with the following Affordability Equation, which establishes a Foreclosure Avoidance Budget that is a cap on the cost of the loan modification.

    (a)    ***Foreclosure Avoidance Budget***.  Except for Eligible Borrowers who receive an unsolicited reduction of their interest rates pursuant to Section 4.3(a)(ii), a Foreclosure Avoidance Budget will be prepared with respect to the Eligible Borrower and the Qualifying Mortgage.  The "***Foreclosure Avoidance Budget***" at any time is the difference between (i) the likelihood and severity of the projected loss in a foreclosure sale and (ii) the likelihood and severity of the projected loss in the event that there was a loan modification with respect to the Qualifying Mortgage and a later foreclosure sale.  For purposes of determining the Foreclosure Avoidance Budget for a Qualifying Mortgage, the LTV will be based on the Market Value.

(b) **Affordability Criteria.**

    (i)    Subject to the Foreclosure Avoidance Budget, if tax and insurance escrows are maintained with respect to the Qualifying Mortgage, the Eligible Borrower will be offered a loan modification that produces a first-year payment of principal (if applicable), interest, taxes, and insurance equating to 34% of the Eligible Borrower's income, or as close to 34% of the Eligible Borrower's income as the Foreclosure Avoidance Budget permits without exceeding 42% of the Eligible Borrower's income.

    (ii)    Subject to the Foreclosure Avoidance Budget, if tax and insurance escrows are not maintained with respect to a Qualifying Mortgage, the Eligible Borrower will be offered a loan modification that produces a first-year payment of principal (if applicable) and interest equating to 25% of the Eligible Borrower's income, or as close to 25% of the Eligible Borrower's income as the Foreclosure Avoidance Budget permits without exceeding 34% of the Eligible Borrower's income.

(c) **Borrowers Who Cannot Afford a Loan Modification.** There is no obligation to offer loan modifications with respect to Qualifying Mortgages if the Eligible Borrower cannot be qualified under the Affordability Equation. Such Eligible Borrowers may be eligible for a Relocation Assistance payment and/or a payment under the Foreclosure Relief Program, all as provided in Sections 5 and 6.

4.5    **Outreach to Borrowers at Risk of Delinquency.** Borrowers with Subprime Mortgage Loans or Pay Option ARMs with first-payment due dates between January 1, 2004 and December 31, 2007, whose payments are scheduled to change as a result of an interest-rate reset, Recast, or expiration of an interest-only term, will be sent a communication approximately ninety (90) days before the payment change inviting them to contact their CFC Servicer if they believe they will not be able to afford their new payments. In the event that a borrower responds to this communication, the borrower will be considered for loan modifications under the eligibility criteria in this Judgment.

14

1      4.6     *Restrictions on Initiation or Advancement of Foreclosure Process for*

2  *Eligible Borrowers.*

3        (a)     The foreclosure process for a Qualifying Mortgage of an Eligible Borrower will

4  not be initiated or advanced for the period necessary to determine such Eligible Borrower's

5  interest in retaining ownership and ability to afford the revised mortgage terms, as well as the

6  investor's willingness to accept a loan modification.

7        (b)     Any such foreclosure process will be initiated or advanced only if:

8              (i)     it is determined, based on communication with the Borrower or based on

9  the Borrower's abandonment of the residential property that secures the

10  mortgage loan, that the Borrower does not wish to retain ownership of the

11  residence that secured the mortgage loan;

12             (ii)    it is or has been determined that the Borrower cannot be qualified for, or

13  has refused, a loan modification under this Judgment within the limits of

14  the Affordability Equation, as applicable; or

15           (iii)   despite reasonable efforts, servicing agents have been unable to make

16  contact with the borrower to determine his or her preferences with regard

17  to home ownership, or to obtain information concerning his or her income

18  and ability to afford a mortgage payment under a modification.

19      4.7     *Miscellaneous Provisions Related to Loan Modification Program.*

20        (a)     *Commitment to Waive Late/Delinquency Fees.*  Late/delinquency fees will be

21  waived to the extent they arise with respect to past due loan payments that remain unpaid as

22  of the date immediately before modification of the Qualifying Mortgage under this Judgment.

23  Late/delinquency fees will not be waived to the extent they arise with respect to loan

24  payments that were previously past due but were subsequently paid prior to the date

25  immediately before modification.

26        (b)     *Commitment Not to Charge Loan Modification Fees.*  Except to the extent

27  required in connection with the HOPE for Homeowners Program, Eligible Borrowers will not

28

1  be charged loan modification fees in connection with loan modifications of Qualifying

2  Mortgages hereunder.

3      (c)    **Prepayment Penalty Waivers.**  Prepayment penalties will be waived in

4  connection with any payoff or refinancing (even if refinanced by a person not Affiliated with

5  CFC) of a Qualifying Mortgage that is a Subprime Mortgage Loan or Pay Option ARM that (i)

6  had a first payment due date between January 1, 2004 and December 31, 2007, (ii) was

7  directly or indirectly held by CFC on June 30, 2008, and (iii) which at the time of the payoff or

8  refinancing is held by CFC or any Affiliate.  Investor owners or their representatives of

9  Qualifying Mortgages that are Subprime Mortgage Loans or Pay Option ARMs serviced by a

10  CFC Servicer will be encouraged to waive prepayment penalties in such circumstances.

11      (d)    **Commitment to Consider Additional Relief for Borrowers Receiving**

12  **Modifications and Later Becoming Delinquent.**  Eligible Borrowers with respect to

13  Qualifying Mortgages who have earlier received loan modifications or other workouts, whether

14  or not pursuant to this Judgment, will be eligible to be considered for new loan modification

15  offers under this Judgment if they otherwise satisfy the eligibility criteria.

16      (e)    **Representation Concerning Investor Delegation and Approval.**  CFC

17  represents that CFC Servicers currently have, or reasonably expect to obtain, discretion to

18  pursue the foreclosure avoidance measures outlined in this Judgment for a substantial

19  majority of Qualifying Mortgages.  If CFC Servicers do not have discretion to pursue these

20  foreclosure avoidance measures, best efforts will be used to obtain appropriate investor

21  authorization.

22      4.8    **Commitment to Implement Relief Measures Authorized by Federal**

23  **Government.**  To the extent the federal government acquires any Qualifying Mortgages and,

24  as the owner of these mortgages, authorizes loan modifications that offer borrower benefits

25  greater than those associated with the modifications outlined in this Judgment, such relief

26  measures will be pursued in modifying such Qualifying Mortgages to the full extent of such

27  authorization.

28

4.9 **Timeframe for Loan Modification Process.** The loan modification process will be managed to ensure that offers of loan modifications under this Judgment, (other than unsolicited interest rate reductions), are made to Eligible Borrowers, on average, no more than 60 days after such Eligible Borrowers make contact with the applicable CFC Servicer and provide any required information concerning a possible modification.

4.10 **Response to Intentional Nonperformance by Borrowers.** If CFC detects material levels of intentional nonperformance by Eligible Borrowers that appears to be attributable to the introduction of the loan modification program, it reserves the right to require objective prequalification of Eligible Borrowers for loan modifications under the program by obtaining verification of all sources of income and the application of funds and to take other reasonable steps. Such prequalification could result in the elimination of unsolicited interest rate reductions, inhibit streamlined solutions, and could otherwise significantly slow implementation of the loan modification program.

4.11 **No Releases with Respect to Loan Modifications.** In connection with loan modifications offered under this Judgment, no releases of claims will be solicited or required from Eligible Borrowers.

4.12 **Number of Loan Modification Offers before March 31, 2009.** On or before March 31, 2009, loan modifications will be offered by CFC Servicers in accordance with this Judgment to not fewer than 50,000 Delinquent Borrowers on a nationwide basis. The Office of the Attorney General of the State of Nevada may terminate the Judgment and no longer be bound by the release set forth in Section 9.2 if there is a material failure to satisfy this commitment. If the Office of the Attorney General terminates this Judgment, any unspent portion of the Foreclosure Relief Program allocation that has been reserved by the Office of the Attorney General for purposes other than making payments to Borrowers as provided in Section 6 of this Judgment will be repaid to CFC.

4.13 **Second or Junior Liens.** Loan modifications contemplated in Section 4 of this Judgment shall be made without consideration of second or junior liens on mortgaged

properties. CFC does not expect that the presence of second or junior liens will impede Eligible Borrowers from receiving a loan modification offer under Section 4 of this Judgment.

## 5. RELOCATION ASSISTANCE PROGRAM

Through the Termination Date, payments will be provided to borrowers who are unable to retain their homes in accordance with this Section 5.

5.1 **Eligibility.** Borrowers under CFC Residential Mortgage Loans who (a) were serviced by a CFC Servicer on June 30, 2008 (whether or not they are Qualifying Mortgages), (b) occupy a 1-to-4 unit residential property subject to servicing by a CFC Servicer on the date of determination of eligibility hereunder, and (c) are subject to a foreclosure sale date on or before the Termination Date, will be offered an agreement under which they can receive a cash payment to assist with the Borrower's transition to a new place of residence (**"Relocation Assistance payment"**) in exchange for voluntarily and appropriately surrendering the residence that, at the time of the foreclosure sale, secured the Borrower's mortgage loan. Borrowers who are eligible for, or receive, payments under the Foreclosure Relief Program may also receive a Relocation Assistance payment.

5.2 **Amount.** The amount of Relocation Assistance payments offered to any Borrower will be in the discretion of CFC or its delegee according to its or their assessment of the individual circumstances of the Borrower (*e.g.*, number of dependents or amount of moving expenses).

5.3 **Timing of Payments.** Relocation Assistance payments shall be made to a Borrower no later than fourteen days following the Borrower's voluntary and appropriate surrender of the residence that secured the mortgage loan.

5.4 **Payment Projection.** CFC projects that, from October 1, 2008, through December 31, 2010, Relocation Assistance payments will be made to 35,000 borrowers on a nationwide basis in a total amount of more than $70,000,000.

///

///

///

## 6.    FORECLOSURE RELIEF PROGRAM

Payments shall be made available to borrowers who experienced a foreclosure sale, or who were 120 days or more delinquent in making mortgage payments soon after their loans were originated or after an interest rate reset, in accordance with this Section 6.

6.1    ***Payment.*** CFC shall make available $3,041,882 for payments to borrowers within the State of Nevada, or otherwise for foreclosure relief/mitigation or related programs consistent with this Section 6.

6.2    ***Individual Allocation.*** Unless otherwise directed by the Office of the Attorney General in accordance with Section 6.3 hereof, a Borrower will be eligible for payments under the Foreclosure Relief Program if the Borrower:

(a)    Has a CFC-Originated Residential Mortgage Loan secured by owner-occupied property;

(b)    The first payment on the CFC-Originated Residential Mortgage Loan was due between January 1, 2004 and December 31, 2007;

(c)    Six or fewer payments were made on the CFC-Originated Residential Mortgage Loan; and

(d)    The CFC-Originated Residential Mortgage Loan was foreclosed or is 120 days or more delinquent as of the Commencement Date.

6.3    ***Expansion or Contraction of the Foreclosure Relief Program; Reservation of Funds for Other Purposes.*** The Office of the Attorney General may expand the Foreclosure Relief Program to cover additional Borrowers or limit the Foreclosure Relief Program to cover a narrower range of Borrowers, provided that at least those eligible Borrowers who made three or fewer payments over the life of the CFC-Originated Residential Mortgage Loan are covered. If the Office of the Attorney General elects to expand or contract the program, the amount allocated to the State of Nevada will remain the same. The Office of the Attorney General may reserve as much as 50% of the sum allocated to the State of Nevada for foreclosure relief/mitigation or related programs other than payments to defaulted Borrowers, including purchasing or rehabilitating foreclosed properties.

1        6.4     **Communications.**  CFC and the Office of the Attorney General shall consult as

2   to the form and content of any communication sent to Borrowers who are to receive

3   Foreclosure Relief Program payments.

4        6.5     **Unallocated Funds.**  Funds allocated to Borrowers in the State of Nevada who

5   choose not to participate in the Foreclosure Relief Program or who cannot be located after

6   commercially reasonable efforts shall be available to the Office of the Attorney General for re-

7   allocation to Borrowers under this program at the direction of the Office of the Attorney

8   General.

9        6.6     **Release.**  In order to receive payments under the Foreclosure Relief Program,

10   Borrowers will be required to execute a release in accordance with Section 9.1.  Borrowers

11   offered payments under this Foreclosure Relief Program whose loans have not yet been

12   foreclosed shall be afforded at least a three month period to decide whether to execute the

13   release to permit them to determine whether they wish to raise claims covered by the release.

14        **7.     BANK OF AMERICA FOUNDATION COMMUNITY INVESTMENT ACTIVITIES**

15        The parties understand that, while the Bank of America Foundation (**"Foundation"**) is

16   not a party to, or in any way bound by, this Judgment, the Foundation intends to work actively

17   with non-profit organizations, community development corporations, and others in addressing

18   the adverse effects of the current housing crisis, particularly by promoting community

19   redevelopment and facilitating the application of Housing and Economic Recovery Act funds

20   to beneficial usage of real estate owned properties.  CFC commits to collaborate in good faith

21   with the Office of the Attorney General to identify ways in which CFC can support or

22   complement the Foundation's efforts.

23        **8.     REPORTING REQUIREMENTS**

24        8.1     **Eligible Borrowers in Qualifying Mortgages.**

25        (a)     On a quarterly basis through June 30, 2010, CFC shall report the following

26   information to the Office of the Attorney General:

27   ///

28

20

(i)   The names and addresses of Eligible Borrowers in the State of Nevada in Qualifying Mortgages who received loan modification offers under this Judgment, and for whom loan modifications were concluded;

(ii)  For loan modifications offered or concluded under this Judgment, the total dollar amount of interest and principal expected to be saved by Borrowers as a result of such modifications over the life of the loans;

(iii) For all loan modifications under this Judgment concluded within the reporting period in the State of Nevada, the original and modified loan terms, and the amounts of late/delinquency fees waived, loan modification fees waived, and prepayment penalties waived by CFC pursuant to this Judgment;

(iv)  For a sample of Eligible Borrowers in Qualifying Mortgages for whom CFC was unable to procure a loan modification offer under this Judgment during the reporting period (which sample shall be no less than 5% of all such Eligible Borrowers), the factors preventing a loan modification offer;

(v)   The number and total amount of Relocation Assistance payments or Foreclosure Relief payments made to Borrowers in the State of Nevada during the reporting period;

(vi)  Delinquency data on active loans with first payment due dates between January 1, 2004 and December 31, 2007 that are secured by Borrower-occupied residential property in the State of Nevada, broken down by type of loan; and

(vii) Aggregated delinquency/default data on all loans modified under this Judgment for Eligible Borrowers in the State of Nevada, separated by type of modification.

(b)   CFC shall provide annual reports to the Office of the Attorney General, that include the information specified in Section 8.1(a) for the periods July 1, 2010 through June 30, 2011, and July 1, 2011, through June 30, 2012.

21

8.2   *Other Loan Modifications.*  With the same frequency as specified in Section 8.1, CFC will provide to the Office of the Attorney General a report detailing the numbers and types of modifications concluded on first-lien residential mortgage loans secured by Borrower-occupied property in the State of Nevada, (other than Qualifying Mortgages), and the total unpaid principal balance of such modified loans.

8.3   *Best Servicing Practices for Modifying First Lien Qualifying Mortgages on Residential Property Subject to Second Lien Mortgages.*  CFC will periodically report to the Office of the Attorney General on its progress in developing best servicing practices as described in Section 3.1(h).

8.4   *Compliance Monitor.*  CFC will appoint an employee as the Compliance Monitor for this Judgment.  The Compliance Monitor will be responsible for (a) making reports to the Office of the Attorney General under this Judgment and (b) receiving and responding to complaints from the Office of the Attorney General or from individual borrowers concerning the operation of the loan modification program.

## 9.   RELEASES; MORE FAVORABLE SETTLEMENTS

9.1   *Releases from Borrowers.*  Borrowers to whom payments under the Foreclosure Relief Program are offered shall, as a condition of receiving such payments, be required to execute and return to CFC a release of claims that includes the following language:

In consideration for the payment we are to receive under the Foreclosure Relief Program, we release Countrywide Financial Corporation and its affiliates and their respective directors, officers, employees and agents (except brokers) from all civil claims, causes of action, any other right to obtain any type of monetary damages (including punitive damages), expenses, attorneys' and other fees, rescission, restitution or any other remedies of whatever kind at law or in equity, in contract, in tort (including, but not limited to, personal injury and emotional distress), arising under any source whatsoever, including any statute, regulation, rule, or common law, whether in a civil, administrative, arbitral or other judicial or non-judicial proceeding, whether known or unknown, whether or not alleged, threatened or asserted by us

22

1   or by any other person or entity on our behalf, including any currently pending or future

2   purported or certified class action in which we are now or may hereafter become a class

3   member, that arise from or are in any way related to CFC Loan No. [_____] and any loans

4   originated directly or indirectly by Countrywide Financial Corporation or its affiliates in

5   connection therewith that are secured by a second mortgage, including, without limitation, the

6   origination of any such loan (and any representations or omissions made during that

7   origination process), the terms and conditions of any such loan, and the servicing or

8   administration of any such loan after its origination; provided, however, that nothing herein

9   shall bar the assertion of any released claim solely as an affirmative defense to any claim

10  against us for a deficiency in respect of any such loan, but in no event shall we be permitted to

11  obtain an affirmative recovery in any such deficiency action.

12      9.2   *Release.*  As to CFC and its Affiliates, this Judgment effects a full resolution,

13  complete settlement, and release by the Office of the Attorney General of the State of Nevada

14  of all claims arising out of the residential mortgage origination or servicing activities of CFC

15  and its subsidiaries occurring before entry of this Judgment that are within the authority of the

16  Office of the Attorney General to release, except for (i) any claims that the State of Nevada

17  might have as an investor in CFC securities; (ii) any regulatory or enforcement proceedings by

18  or on behalf of another State of Nevada officer or agency; (iii) any claims or investigations

19  identified to CFC by the Office of the Attorney General of the State of Nevada; and (iv) any

20  criminal investigations or proceedings.  This Judgment does not resolve or release, but

21  instead specifically preserves, any claims the State of Nevada may have against Angelo

22  Mozilo or David Sambol.

23      9.3   *More Favorable Terms.*  The parties agree that should CFC resolve allegations

24  concerning the conduct covered by this Judgment which occurred before the date of this

25  Judgment in actions brought by Attorneys General of other states on terms that are different

26  than those contained in this Judgment (other than terms offered by CFC but not accepted by

27  the Office of the Attorney General), then CFC will provide a copy of those terms to the Office

28  of the Attorney General for review.  If, after review, the Office of the Attorney General

23

1    determines the terms of such resolutions are, taken as a whole, more favorable than those

2    contained in this Judgment, then CFC shall stipulate that this Judgment shall be amended to

3    reflect all of such terms in place of the terms hereof.

### 10.    OTHER TERMS AND CONDITIONS

5        10.1    *No Admission.* The Judgment shall not constitute an admission of wrongdoing

6    by BAC or CFC, nor shall it be cited as such by the Office of the Attorney General of the State

7    of Nevada. The Agreement shall not be admissible in any other proceeding as evidence of

8    wrongdoing or a concession of responsibility.

9        10.2    *Confidentiality.* The Office of the Attorney General agrees that all confidential

10   information disclosed to it by BAC or CFC or any of their Affiliates, including but not limited to

11   the periodic reports that will be provided pursuant to Section 8, shall be kept confidential;

12   provided, however, that the following information reported to the Office of the Attorney

13   General on a periodic basis shall not be deemed confidential to the extent aggregated for

14   Borrowers in the State of Nevada for a full reporting period: (a) the total number of loans

15   modified, (b) the total number of loans modified, by type of loan, (c) the total dollar amount of

16   interest and principal expected to be saved by Borrowers as a result of such modifications

17   over the life of the loans, and (d) the total dollar amount of payments under Sections 5 and 6

18   of this Judgment to Borrowers. The Office of the Attorney General shall not disclose or use

19   any confidential information without the prior written consent of the disclosing party, except to

20   the extent required by law, regulation, or court order (and in such case, only upon prior written

21   notice to the disclosing party).

22       10.3    *Submission to Jurisdiction for Limited Purpose.* CFC submits to the

23   jurisdiction of the court in the State of Nevada for the limited purpose of entering into and

24   enforcing this Judgment only. Any acts, conduct, or appearance by CFC does not constitute

25   and shall not be construed as a submission to the general jurisdiction of any court in the State

26   of Nevada for any purpose whatsoever.

27       10.4    *Enforcement.* This Court shall retain jurisdiction over this matter for the

28   purposes of (a) enabling the Office of the Attorney General of the State of Nevada to apply, at

any time, for enforcement of any provision of this Judgment and for sanctions or other remedies for any violation of this Judgment; and (b) enabling any party to this Judgment to apply, upon giving 45 days written notice to all other parties, for such further orders and directions as might be necessary or appropriate either for the construction or carrying out of this Judgment or for the modification or termination of one or more injunctive provisions of this Judgment.

10.5   **Conflict with Subsequent Law.**   In the event that any applicable law conflicts with any provision hereof, making it impossible for CFC to comply both with the law and with the provisions of this Judgment, the provisions of the law shall govern.

10.6   **No Third Party Beneficiaries Intended.**   This Judgment is not intended to confer upon any person any rights or remedies, including rights as a third party beneficiary. This Judgment is not intended to create a private right of action on the part of any person or entity other than the parties hereto.

10.7   **Service of Notices and Process.**   Service of notices and process required or permitted by this Judgment or its enforcement shall be in writing and delivered or served (as appropriate) on the following persons, or any person subsequently designated by the parties:

**For BAC and CFC:**
John Beisner
Brian Boyle
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006

**For the Office of the Attorney General:**
CATHERINE CORTEZ MASTO
Attorney General
ERNEST D. FIGUEROA
Chief Deputy Attorney General
Nevada Bar No. 006295
100 North Carson Street
Carson City, Nevada  89701
Attorneys for the State of Nevada

Any party may change the designated persons and address for delivery with respect to itself by giving notice to the other parties as specified herein.

25

10.8   *Waiver*.  The failure of any party to exercise any rights under this Judgment shall not be deemed a waiver of any right or any future rights.

10.9   *Severability.*  If any part hereof shall for any reason be found or held invalid or unenforceable by any court of competent jurisdiction, such invalidity or unenforceability shall not affect the remainder hereof, which shall survive and be construed as if such invalid or unenforceable part had not been contained herein.

10.10  *Counterparts.*  This Judgment may be signed in one or more counterparts, each of which shall be deemed an original.  Facsimile copies of this Judgment and the signatures hereto may be used with the same force and effect as an original.

10.11  *Inurement.*  This Judgment is binding and inures to the benefit of the parties hereto and their respective successors and assigns.

10.12  *Integration.*  This Judgment constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

10.13  *Amendment.*  This Judgment may be amended solely by written agreement signed by the Office of the Attorney General and CFC.

10.14  *Termination.*  Except to the extent an early date is specified or the provisions of this Judgment are earlier terminated according to the terms hereof, the obligations of CFC under this Judgment shall terminate on the Termination Date.  Provided, however, that no termination of the obligations under this Judgment shall change or terminate the terms of any loan modification entered into pursuant to Section 4 of this Judgment.

///
///
///
///
///
///
///

26

1

*SIGNATURES:*

2

FOR COUNTRYWIDE FINANCIAL CORPORATION

3

4   By: _____

5   JAMES CICCONE
    Title:  Executive Vice President, Deputy General Counsel

6   DATED: _1/26/09_

7

8

*APPROVED AS TO FORM:*

9

10  By: _____

11  ARIEL E. STERN
    Nevada Bar No. 008276

12  BALLARD SPAHR ANDREWS & INGERSOLL, LLP
    100 City Parkway, Suite 1750

13  Las Vegas, Nevada 89106
    (702) 387-3085

14  Attorney for Countrywide Financial Corporation

15  DATED: _2/2/09_

16

17

*FOR THE STATE OF NEVADA:*

18

19  CATHERINE CORTEZ MASTO
    Attorney General

20

21  By: _____

22  ERNEST D. FIGUEROA
    Chief Deputy Attorney General

23  Nevada Bar No. 006295
    100 North Carson Street

24  Carson City, Nevada  89701
    775-684-1197

25  Attorneys for Plaintiffs, State Of Nevada

26  DATED: _1/29/09_

27

28