1
2
3
4                       **UNITED STATES DISTRICT COURT**
5                           **DISTRICT OF NEVADA**
6
7   STATE OF NEVADA,                    )
                                        )
              Plaintiff,                )
8                                       )        3:11-cv-00135-RCJ-RAM
         vs.                            )
9                                       )
    BANK OF AMERICA CORP. et al.,       )              **ORDER**
10                                      )
              Defendants.               )
11  _____ )

12          This case arises out of a national bank's and its subsidiaries' practices with regard to

13  mortgage modifications.  Pending before the Court is Plaintiff's Motion to Remand (ECF No.

14  18).  For the reasons given herein, the Court denies the motion.

15  **I.      FACTS AND PROCEDURAL HISTORY**

16          Plaintiffs sometimes claim in foreclosure lawsuits that the beneficiary or loan servicer

17  made misrepresentations or promises concerning the availability of a mortgage modification.

18  The State of Nevada ("the State") sued Defendants in state court on behalf of potentially

19  thousands of individual Nevadans on a single cause of action under Nevada's Deceptive Trade

20  Practices Act ("DTPA"), Chapter 598 of the Nevada Revised Statutes ("NRS"), alleging seven

21  types of such misrepresentations. (*See* Compl., Dec. 17, 2010, ECF No. 4-1).  The State requests

22  declaratory judgment, an injunction against any practices declared to be unlawful, civil penalties

23  as provided by sections 598.0999(2) and 598.0973, restitution as provided by section 598.0993,

24  and the costs of investigation and attorney's fees as provided by section 598.0999(2). (*See id.* at

25  35–36).  Defendants removed, asserting three sources of jurisdiction: (1) a class action or mass

1  action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d); (2) the requirement

2  of the Court to interpret the Home Affordable Modification Program ("HAMP")[1] in order to

3  determine the DTPA claim, 28 U.S.C. § 1331; or (3) bankruptcy jurisdiction under 28 U.S.C.

4  § 1334(b) because some of the Nevadans on behalf of whom the State has brought the present

5  action are likely in bankruptcy, and resolution of their claims will affect their bankruptcy estates.

6  Plaintiff has moved to remand.

7  **II.   LEGAL STANDARDS**

8      Federal courts are courts of limited jurisdiction, possessing only those powers granted by

9  the Constitution and statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008)

10  (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  The party

11  asserting federal jurisdiction bears the burden of overcoming the presumption against it.

12  *Kokkonen*, 511 U.S. at 377.  Federal Rule of Civil Procedure 12(b)(1) provides an affirmative

13  defense for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  Additionally, a court

14  may raise the question of subject matter jurisdiction sua sponte at any time during an action.

15  *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003).  Regardless of who raises

16  the issue, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must

17  dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing

18  16 J. Moore et al., Moore's Federal Practice § 106.66[1], pp. 106-88 to 106-89 (3d ed. 2005)).

19      A district court's jurisdiction extends to cases removed from state court under particular

20  circumstances. 28 U.S.C. § 1441(b) ("Any civil action of which the district courts have original

21  jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the

22  United States shall be removable without regard to the citizenship or residence of the parties.

23  Any other such action shall be removable only if none of the parties in interest properly joined

24  ─────────────

25      [1]*See* Dodd-Frank Wall Street Reform and Consumer Protection Act § 1482, 12 U.S.C. § 5219a (2010).

1   and served as defendants is a citizen of the State in which such action is brought.").  In cases

2   removed from state court, a federal court later finding a lack of subject matter jurisdiction does

3   not dismiss, but must remand to state court. 28 U.S.C. § 1447(c).

4   **III.    ANALYSIS**

5       **A.    Diversity Jurisdiction**

6           Section 1332(d) requires minimum diversity between the parties; i.e., at least one

7   member of the plaintiff class must be diverse from at least one defendant. 28 U.S.C. §

8   1332(d)(2)(A).  The Supreme Court has ruled that a state itself is not a citizen of any kind, and

9   there is therefore no diversity jurisdiction in the district courts when a state brings a case as a

10  lone plaintiff. *See Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894).  The Court,

11  however, has distinguished the situation where a state is only a nominal plaintiff and the real

12  parties in interest are one or more of the state's individual citizens:

13              [T]his case . . . does not come within the rule above stated.  It is not an action
                to recover any money for the state.  Its results will not inure to the benefit of the state
14              as a state in any degree.  It is a suit to compel compliance with an order of the
                railroad commissioners in respect to rates and charges.  The parties interested are the
15              railway company, on the one hand, and they who use the bridge, on the other; the one
                interested to have the charges maintained as they have been, the others to have them
16              reduced in compliance with the order of the commissioners.  They are the real parties
                in interest, and in respect to whom the decree will effectively operate.

17  *Missouri, Kansas & Texas Ry. Co. v. Hickman*, 183 U.S. 53, 59–60 (1901).

18          The Fifth Circuit recently faced a mixed case. *See Louisiana ex rel. Caldwell v. Allstate

19  Ins. Co.*, 536 F.3d 418 (5th Cir. 2008).  The State of Louisiana had sued several companies in

20  state court for violations of state antitrust laws, and the defendants removed under CAFA. *Id.* at

21  421–22.  The court of appeals affirmed the district court's denial of the state's motion to remand.

22  *Id.* at 422.  Because the state was seeking both injunctive relief as a matter of sovereign

23  enforcement and damages to be paid to a discrete class of individuals, and because the damage

24  claims payable to those individuals satisfied the requirements of a mass action under CAFA, the

25

1  court of appeals left it to the district court on remand whether to retain the entire action or

2  remand the case to state court in part insofar as the state sought injunctive relief. *Id.* at 430.

3  　　　　The district courts to address similar cases have typically remanded them.  For example,

4  the Attorney General of Illinois brought an action in state court against several California

5  defendants pursuant to Illinois' Consumer Fraud and Deceptive Business Practices Act, and the

6  defendants removed based on § 1332(a). *Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1049

7  (N.D. Ill. 2009).  The parties disputed diversity, so the court examined who the real parties in

8  interest were under *Hickman*. *Id.* at 1050.  The court noted that under *Alfred L. Snapp & Son,*

9  *Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982), a state is the real party in interest

10  when it has a "quasi-sovereign" interest in the case. *Id.*  The court found that Illinois had a quasi-

11  sovereign interest in seeking "to exclude a company engaged in allegedly fraudulent activities

12  from soliciting business within its domain." *Id.*  The court then noted that the federal courts were

13  not in agreement what the outcome should be in cases where a state wore "two hats," i.e., where

14  it was the real party in interest as to a quasi-sovereign interest, but where a discrete class of

15  individuals were the real parties in interest as to damages claims. *Id.* at 1051–52.  The court

16  found that most district courts had rejected the Fifth Circuit's solution and decided the remand

17  question based on the purpose of the lawsuit as a whole; if a state has a substantial stake in the

18  outcome of the case, the state is a real party in interest as to the entire case, regardless of whether

19  a small class of individuals are the real parties in interest as to damages claims. *Id.* at 1052–53;

20  *accord People of California v. Universal Syndications, Inc.*, No. C 09-1186 JF (PVT), 2009 WL

21  1689651, at *5 (N.D. Cal. June 16, 2009).

22  　　　　The District of Arizona recently remanded a case very similar to the present case. *See*

23  *Arizona ex rel. Horne v. Countrywide Fin. Corp.*, No. CV-11-131-PHX-FJM, 2011 WL 995963

24  (D. Ariz. Mar. 21, 2011).  The Arizona Attorney General sued Bank of America and others in

25  state court, alleging violations of a consent judgment and the Arizona Consumer Fraud Statute.

1    *Id.* at *1.  The defendants removed, asserting CAFA jurisdiction, federal question jurisdiction,

2    and bankruptcy jurisdiction, just as they assert in the present case. *See id.*  The court rejected all

3    three bases of jurisdiction and remanded.  In addressing CAFA jurisdiction, the court noted that

4    the State of Arizona argued, as the State of Nevada argues in the present case, that CAFA does

5    not apply to *parens patriae* actions and that the state was the real party in interest even if it did.

6    *See id.*  The court distinguished the case from *Caldwell* and found that the State of Arizona was

7    not seeking relief on behalf of a discrete group of individuals, because even though a discrete

8    group of persons might receive restitution as a result of the suit, under the Arizona Consumer

9    Fraud Act there was no private right of action for individuals, so the State of Arizona was the

10   only real party in interest, and there was therefore a lack of diversity under CAFA. *Id.* *2.  In

11   other words, because the individuals could not have sought relief on their own under the statute,

12   the State of Arizona was not merely suing in their place but was suing on its own behalf,

13   regardless of whether it would ultimately pay the proceeds of the suit to the individuals. *Id.*  The

14   court noted that the fact that some individuals would receive restitution did not negate the State

15   of Arizona's substantial interest or render the entire action removable.  The court then noted that

16   even if the individuals were considered the real parties in interest, the suit had not been filed

17   under Rule 23 or a similar state rule or statute, so it was not a "class action" under CAFA, and it

18   was not a "mass action" because no individual persons were named as plaintiffs. *Id.* at *3.

19          Here, unlike the Arizona case, the DTPA provides for a private cause of action. *See Nev.*

20   *Power Co. v. Eighth Judicial Dist. Court of Nev. ex rel. Cnty. of Clark*, 102 P.3d 578, 583 n.7

21   (Nev. 2004) ("NRS 41.600 . . . provides for a private cause of action by a person who is a victim

22   of consumer fraud and defines 'consumer fraud' to include '[a] deceptive trade practice as

23   defined in NRS 598.0915 to 598.0925, inclusive.'" (citing Nev. Rev. Stat. § 41.600(2)(d))

24   (second alteration in original)).  However, as in the Arizona case, the Attorney General has

25   brought the case at least partly in an enforcement capacity.  The district courts are mainly in

1    agreement that when a state attorney general brings such a case, the fact that a discrete class of

2    individuals will receive restitution does not defeat the fact that the gravamen of the action is

3    protection of the public welfare.  District courts have therefore typically granted motions to

4    remand.

5            The Ninth Circuit, however, recently held that when a state sues on behalf of individuals

6    to obtain relief that the individuals *could have* obtained on their own, the state is not the real

7    party in interest, regardless of whether, and in fact especially where, the state sues to further the

8    public welfare. *See Dep't of Fair Emp't & Hous. v. Lucent Tech., Inc.*, --- F. 3d ----, 2011 WL

9    1549232, at *1–5 (9th Cir. 2011).  In *Lucent*, the California Department of Fair Employment and

10   Housing ("DFEH") sued Lucent Technologies, Inc. on behalf of an employee that Lucent had

11   terminated in violation of the California Fair Employment and Housing Act. *Id.* at *1.  In

12   analyzing the district court's refusal to remand for lack of diversity jurisdiction, the court began

13   by noting:

14           [A] State's presence in a lawsuit will defeat jurisdiction under 28 U.S.C. §
             1332(a)(1) only if "the relief sought is that which inures to it alone, and in its favor
15           the judgment or decree, if for the plaintiff, will effectively operate."  In making this
             determination, courts consider the substantive state law. Thus, we will consider what
16           interest California has in this litigation pursuant to its laws.

17   *Id.* at *3 (quoting *Hickman*, 183 U.S. at 59) (citations omitted).  The court specifically rejected

18   "use of quasi-sovereign interest to satisfy *Missouri Railway*'s unique relief requirement" by

19   some district courts as "contradictory to the very language of that opinion." *Id.* at *3 n.2.

20   Therefore, the formerly persuasive district court opinions that stand for the proposition that a

21   state's quasi-sovereign interest in enforcement of a statute necessarily makes the state the real

22   party in interest for the purposes of diversity are irrelevant, because the opposite view is now

23   authoritative within this Circuit. *See id.*  A sovereign interest in furthering the general welfare of

24   the populace makes a state a real party in interest for the purposes of *standing*, but it does not

25   make the state a real party in interest for the purposes of *diversity*. *Id.* at *4 (citing *Hickman*, 183

1    U.S. at 60).  If the relief sought, whether monetary or equitable, "will effectively operate in favor

2    of the person claiming to be aggrieved," then that party is the real party in interest for the

3    purposes of diversity.  *Id.*  Also, a state does not become a real party in interest for the purposes

4    of diversity simply because it seeks equitable remedies applicable to unnamed persons, so long

5    as those persons could obtain such relief on their own if they were to seek it.  *Id.*

6         Plaintiff brings the present single-count action under five provisions of Chapter 598,

7    which is entitled "Deceptive Trade Practices." (Compl. ¶ 135.a–135.e).  Several sections of

8    Chapter 598 are identically entitled "'Deceptive trade practice' defined."  Each of these sections

9    lists several types of activity that can constitute a "deceptive trade practice."  Plaintiff alleges

10   violations of five sections: (1) section 598.0915(9) (false advertising), (*id.* ¶ 135.a); (2) section

11   598.0915(15) (making any false representation in a transaction), (*id.* ¶ 135.b); (3) section

12   598.092(8) (misrepresenting rights, obligations, or remedies), (*id.* ¶ 135.c); (4) section

13   598.0923(3) (violation of state or federal law in connection with sale or lease), (*id.* ¶ 135.d); and

14   (5) section 598.0973 (aggravation due to direction of violation towards an elderly or disabled

15   person), (*id.* ¶ 135.e).  Although Chapter 598 does not itself provide for a private cause of action

16   for violations of its provisions, Chapter 41 does. *See Nev. Power Co.*, 102 P.3d at 583 n.7 (citing

17   Nev. Rev. Stat. § 41.600(2)(d)).  Section 41.600 was amended in 2005 to add subsection (2)(b)

18   and renumber the succeeding subsections. 2005 Nev. Stat. 1425.  The statute provides that "[a]n

19   action may be brought by any person who is a victim of consumer fraud," Nev. Rev. Stat.

20   § 41.600(1), and defines "consumer fraud" to include "[a] deceptive trade practice as defined in

21   NRS 598.0915 to 598.0925, inclusive," *id.* § 41.600(2)(e).  Because the persons on whose behalf

22   the State seeks declaratory, injunctive, and monetary relief[2] in this case could bring their own

23

24        [2]At oral argument, the State argued that they seek restitution for the individual
     consumers, not damages.  But restitution *is* a measure of damages because it is a measure of
25   harm caused to one party by another and payable to the aggrieved party, as contradistinguished
     from a civil fine, which is not measured by the actual harm caused, and which is payable not to a

1  actions to obtain such relief under section 41.600(2)(e) for any of the violations alleged in

2  paragraph 135 of the Complaint, the consumers are the real parties in interest for the purposes of

3  diversity as to those claims. *Lucent*, 2011 WL 1549232, at *1–5.  Section 598.0973, which

4  provides for a heightened civil penalty for deceptive trade practices defined elsewhere, is not

5  within the range of sections mentioned under section 41.600(2)(e), but section 598.0973 does not

6  provide any separate cause of action.  Although the Nevada Supreme Court does not appear to

7  have had occasion to address this provision in any context, it is almost certainly applicable to a

8  private suit under section 41.600(2)(e).  The Court therefore finds that the "thousands of Nevada

9  consumers," (Compl. ¶ 13), on whose behalf the State has brought this action are real parties in

10 interest for the purposes of diversity.

11         In the present case, the State is also a real party in interest, however, because in addition

12 to restitution to consumers under section 598.0993 and other declaratory and injunctive relief

13 available to consumers via their own actions, the State seeks civil fines under section

14 598.0999(2) that are payable directly to the State, not to the consumers.  But the State's presence

15 as a real party of interest will not defeat diversity if the consumers are also real parties in

16 interest.  In cases where a state is the sole plaintiff there is no diversity because the sole plaintiff

17 has no state of citizenship and the concept of diversity is simply inapplicable.  But where a state

18 has co-plaintiffs who are citizens of some state, the state's presence as a party neither adds to nor

19 detracts from the equation.  Here, both the consumers (because of the prayer for restitution and

20 declaratory and injunctive relief) and the State itself (because of the prayer for civil fines that are

21 not pursuable by the consumers) are real parties in interest for the purposes of diversity.  The

22 State has no citizenship, but so long as the consumers are minimally diverse from Defendants,

23

24 ─────────────────

25 victim but to a civil authority in order to punish or deter.  The important distinction in the present
   case is between restitution damages payable to private parties and civil penalties payable to the
   State.

1  there is federal jurisdiction so long as CAFA is otherwise satisfied. 28 U.S.C. § 1332(d).[3]

2      CAFA is otherwise satisfied.  CAFA requires that one plaintiff be diverse from one

3  defendant and that the amount in controversy exceed $5 million. *Id.* § 1332(d)(2), (2)(A).

4  Plaintiff alleges thousands of aggrieved consumers, and the restitution for mortgage fraud is

5  almost certainly several thousand dollars per consumer.  CAFA further limits "class action"

6  jurisdiction to "civil action[s] filed under rule 23 of the Federal Rules of Civil Procedure or

7  similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or

8  more representative persons as a class action." *Id.* § 1332(d)(1)(B).  Although Plaintiff did not

9  formally file the state action as a "class action" in state court, it is in substance a "class action"

10  under CAFA because of its nature.  The Fifth Circuit has ruled that so long as a case is brought

11  pursuant to a state class action statute, it does not matter whether the state itself is the class

12  representative for purposes of CAFA diversity. *In re Katrina Canal Litig. Breaches*, 524 F.3d

13  700, 705 (5th Cir. 2008).  Closer to the point, so far as the Court can tell, the only court of

14  appeals to address the question of whether a state's formal class action procedures must be used

15  or whether the action need only be a class action in nature has noted in dicta that invocation of

16  class action procedures is "a mere matter of form," and that "[a] complaint that contains

17  class-type allegations historically has been assumed to assert a class action before formal class

18  certification." *Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 39–40

19  (1st Cir. 2009).  At least one district court has assumed without deciding that an action that could

20  have been brought directly under § 1332(d) qualified for CAFA removal. *See Patterson v. Rite

21  Aid Corp. Headquarters*, 752 F. Supp. 2d 811, 813 n.2, (N. D. Ohio 2010).  Also, the "home

22  state exception" does not apply in this case:

23      (4) A district court shall decline to exercise jurisdiction under paragraph (2)--

24

25

_____

[3]*Lucent* involved traditional § 1332(a) diversity.

1

(A)

2

(i) over a class action in which--

3

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

4

5

(II) at least 1 defendant is a defendant--

6

(aa) from whom significant relief is sought by members of the plaintiff class;

7

8

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

9

10

(cc) who is a citizen of the State in which the action was originally filed; and

11

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

12

13

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

14

15

16

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

17

18

28 U.S.C. § 1332(d)(4).  Because no Defendant is a Nevada citizen, neither subsection (A) nor

19

(B) applies.  If there were no "class action" jurisdiction, there could perhaps still be "mass

20

action" CAFA jurisdiction over any consumers whose claims exceed $75,000, because the

21

monetary claims of at least 100 persons are proposed to be tried jointly due to common issues of

22

law or fact. 28 U.S.C. § 1332(d)(11)(B)(i).  However, because the claims all allegedly arise from

23

activity in Nevada and all injuries allegedly resulted in Nevada, there is no "mass action"

24

jurisdiction. *Id.* § 1332(d)(11)(B)(ii)(I).

25

In summary, both the State and the consumers are real parties in interest for the purposes

1  of diversity in this case, and because the requirements of "class action" jurisdiction under

2  § 1332(d) are satisfied when all real parties in interest are considered, the Court denies the

3  motion to remand.  The facts in *Horne* are different, and critically so in light of *Lucent*.  In

4  *Horne*, there was no claim for restitution that would inure to the benefit of individual consumers

5  based on their personal losses.  Also, the consumers in *Horne* were unable to pursue their own

6  private actions.  Based on *Lucent*, the Court denies the motion to remand.

7       At oral argument, Plaintiff stressed its argument that because the only Plaintiff named in

8  the Complaint was the State itself, that there was no class representative with typical claims, and

9  that there could therefore be no "class action" under CAFA.  But "a number of courts [have]

10 recognized an exception to the rule preventing [an] organization from suing when the association

11 had specific authority or had been created especially to protect the particular interest of the

12 members involved in the action." 7A Charles Alan Wright et al., *Federal Practice &*

13 *Procedure* § 1761, at 165 (3rd ed. 2005).  The primary consideration is whether the

14 representative will adequately represent the class. *Id.* at 169.

15      **B.    Federal Question Jurisdiction**

16      Although most federal question cases are based on federal claims, federal question

17 jurisdiction can be based purely on a state claim if its resolution necessarily requires the

18 construction of federal law:

19           The rule is well settled that a state claim "arises under" federal law "if the
            complaint, properly pleaded, presents a substantial dispute over the effect of federal
20          law, and the result turns on the federal question." *Guinasso v. Pacific First Fed. Sav.*
            *& Loan Ass'n*, 656 F.2d 1364, 1365–66 (9th Cir. 1981), *cert. denied*, 455 U.S. 1020,
21          102 S. Ct. 1716, 72 L. Ed. 2d 138 (1982).  The "vast majority of cases brought under
            the general federal-question jurisdiction of the federal courts are those in which
22          federal law creates the cause of action[,]" *Merrell Dow Pharmaceuticals Inc. v.*
            *Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 3232, 92 L. Ed. 2d 650 (1986), but
23          a case may also arise under federal law "'where the vindication of a right under state
            law necessarily turn[s] on some construction of federal law.'" *Id.* (quoting *Franchise*
24          *Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S. Ct. 2841,
            2846, 77 L. Ed. 2d 420 (1983)).

25

1   *Berg v. Leason*, 32 F.3d 422, 423 (9th Cir. 1994).  Where a state claim directly incorporates the

2   substance of federal law, and where a state claim raises no federal constitutional issues, federal

3   question jurisdiction exists only if the federal law that is incorporated into the state claim

4   provides an independent federal claim:

5           In *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S. Ct.
    3229, 92 L. Ed. 2d 650 (1986), the Court considered in detail the principles of

6   removal jurisdiction when applied to a well-pleaded complaint that relies on a state
    cause of action which incorporates federal law as one of the elements of recovery.

7   The Court held that in such a case, the state claim does not involve a substantial
    federal question unless the federal law incorporated in the state cause of action

8   provides a federal private right of action for its violation. *Id.* 106 S. Ct. at 3237; *see
    also Utley v. Varian Assoc., Inc.*, 811 F.2d 1279 (9th Cir.) (applying *Merrell Dow*),

9   *cert. denied*, 484 U.S. 824, 108 S. Ct. 89, 98 L. Ed. 2d 50 (1987).

10  *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1394 n.4 (9th Cir. 1988).

11        HAMP is a federal program whereby the U.S. government enters into private contracts

12  with banks.  There is no private right of action directly under HAMP, but its incidental

13  interpretation in the course of adjudicating a state tort claim may implicate federal jurisdiction in

14  some instances. *See In re Bank of America Home Affordable Modification Program (HAMP)*

15  *Contract Litig.*, No. 10-md-02193-RWZ (D. Mass. 2010). *But see, e.g.*, *Carlos v. Bank of Am.*

16  *Home Loans*, No. CV 10-1966 AHM (VBKx), 2011 WL 166343, at * 1 (C.D. Cal. Jan. 13,

17  2011).  If the state law fraud action turns on a misrepresentation of what the HAMP program

18  permits or requires, these circumstances will support federal jurisdiction.  In *Horne*, the court

19  rejected federal question jurisdiction, because the complaint there relied on violations of a

20  consent judgment that had created requirements independent from HAMP's and because there

21  could have been violations of the state statute that did not depend on any interpretation of

22  HAMP.  Here, however, it appears that Plaintiff has rested the Complaint at least partially on

23  alleged deceptive trade practices which can only be determined to have been deceptive, i.e.,

24  contained a misrepresentation, if the Court interprets HAMP differently from the way

25  Defendants allegedly represented it to consumers. (Compl. ¶¶ 10–14).

1

### C.    Bankruptcy Jurisdiction

2    Finally, Defendants argue there is "related to" bankruptcy jurisdiction under § 1334(b),

3  because one or more of the individuals who may be entitled to restitution under this action would

4  have his bankruptcy estate affected thereby.  But the burden of determining federal jurisdiction is

5  on the party asserting it, and Defendants simply speculate.  In any case, where a state is not

6  acting as a creditor of a consumer in bankruptcy, restitution claims attendant to a state's

7  enforcement claims satisfy both the "pecuniary purpose" and "public policy" exceptions to

8  bankruptcy jurisdiction. *Horne*, 2011 WL 995963, at *5 (citing *City & County of San Francisco*

9  *v. PG & E Corp.*, 433 F.3d 1115, 1124 (9th Cir. 2006)).

10

### CONCLUSION

11    IT IS HEREBY ORDERED that the Motion to Remand (ECF No. 18) is DENIED.

12    IT IS SO ORDERED.

13  Dated:  This 5th day of July, 2011.

14

15    _____

16    ROBERT C. JONES
      United States District Judge

17

18

19

20

21

22

23

24

25